HENRY MOETT, Plaintiff in Error, *v.* THE PEOPLE OF THE STATE
OF NEW YORK, Defendant in Error.

Upon the trial of an indictment for murder the prisoner was sworn and ex-
amined as a witness in his own behalf. After the court had charged the
jury in substance, that they could accept such parts of the prisoner's testi-
mony as they believed to be true and reject the parts they believed to be
false, it then charged as follows : " When a party in a civil action deliber-
ately swears false to one material part of his testimony, and the jury are
satisfied that he has so sworn false, intentionally false, they are not only
at liberty but it is sometimes the duty of the jury to reject the whole.
The maxim is *falsus in uno, falsus in omnibus.*"    The prisoner's counsel
excepted to the maxim.    *Held,* untenable ; that the maxim was a sound
one for the guidance of juries ; and that, taking the whole charge to-

gether, it could not be construed as a direction to reject any evidence the jury believed to be true.

One of the defenses was that the prisoner was in such a state of mind at the time of the killing that he was not responsible for his act. The court charged in substance that the test of responsibility was the capacity of the prisoner to distinguish between right and wrong at the time of and in respect to the act complained of, and that the people must satisfy the jury, beyond all reasonable doubt, that at the moment the act charged was committed, if committed by the prisoner, he had sufficient reason and understanding to form and have a criminal intent and to distinguish between right and wrong. The prisoner's counsel thereafter requested the court to charge " that the people must satisfy the jury beyond all reasonable doubt that at the moment the act alleged in the indictment was committed by the prisoner if he did commit it he had reason, perception and understanding sufficient to know that the laws of God and the land forbid him from committing it." The court declined to charge in the language of the request, stating it adhered to the original charge. *Held,* no error ; that the charge was substantially as requested and properly presented the law on the subject, and the court was not bound to adopt the language of the counsel.

A charge not excepted to on such a trial cannot be reviewed here.

A witness for the prosecution having testified to a conversation with the prisoner, was asked, on cross-examination, if the prisoner made a certain statement in another conversation, which was conceded to be no part of the conversation already testified to ; this was excluded. *Held,* no error.

The prisoner was convicted and sentenced to be hung upon a day specified ; he was respited by the governor, and a writ of error and stay of execution was granted ; the conviction was affirmed by the General Term, a writ of *habeas corpus* was issued in that court, and thereafter at a General Term constituted of different justices from those who heard and decided the case, upon the production of the prisoner he was again sentenced to be hung on a day named. *Held,* that while it was probably not strictly regular for the court again to pass judgment, the issuing of the writ of *habeas corpus* was proper and it was the duty of the court, after examining the facts, to issue a warrant to the sheriff commanding him to execute the sentence already passed at a day specified (2 R. S. 659, §§ 23, 24), that pronouncing the same judgment did no injury and did not vitiate the former judgment ; also that it was not material that the court passing the sentence was differently constituted from that which affirmed the judgment, it was sufficient that it was legally constituted.

(Argued May 5, 1881; decided May 31, 1881.)

ERROR to the General Term of the Supreme Court, in the third judicial department, to review judgment entered upon an

order made November 17, 1880, which affirmed a judgment of the Court of Oyer and Terminer in and for the county of Columbia, entered upon a verdict convicting the plaintiff in error of the crime of murder in the first degree. (Reported below, 23 Hun, 60.)

The facts material to the questions discussed are stated in the opinion.

*R. E. Andrews* for plaintiff in error. The court erred in charging the jury that if they were satisfied that the prisoner had intentionally sworn falsely in any material part of his testimony, they might or must reject the residue, although they believed it to be true. (*People* v. *Bennett,* 49 N. Y. 140; *McKenna* v. *People,* 22 Alb. L. J. 15; *Chapman* v. *Erie R. W. Co.,* 55 N. Y. 587; *Dunn* v. *The People,* 29 id. 528, 529, 530; *Wilkins* v. *Earle,* 44 id. 182, 190; *Warren* v. *Haight,* 62 Barb. 492; *Pease* v. *Smith,* 61 N. Y. 483; *Deering* v. *Metcalf,* 74 id. 507; *People* v. *Evans,* 40 N. Y. 1; *Conrad* v. *Williams,* 6 Hill, 444.) An error in a charge in a criminal trial is available without a formal exception. (*Carnal* v. *The People,* 1 Park. Cr. 256; *Wilke* v. *The People,* 53 N. Y. 525; *People* v. *Bennett,* 49 id. 140; *Buel* v. *The People,* 78 id. 502; *People* v. *Holmes,* 5 Wend. 199.) The General Term erred in exercising the power of fixing a day for the execution of the plaintiff in error. (Laws of 1859, chap. 462, § 2; *In re Ferris,* 35 N. Y. 267; *Quimbo Appo* v. *The People,* 20 id. 530, 546; *Buel* v. *The People,* 18 Hun, 494.) This court on writ of error, if it finds that the General Term erred in interfering with and modifying the judgment of the Oyer and Terminer by changing the day of execution, will discharge the prisoner. (*Shephard* v. *The People,* 25 N. Y. 417; 2 R. S. 736, § 21; *The People* v. *The Judges of the Dutchess Oyer and Terminer,* 2 Barb. 286; *The People* v. *Comstock,* 8 Wend. 549.) The questions of the legality of the proceeding of the General Term are properly raised on this writ of error. (*Kuckler* v. *The People,* Erie Gen. Term, 5 Park. Cr. 215; *Hastings* v. *People,* 22 N. Y. 95; *Shepard*

v. *People*, 25 id. 409.) The fixing the day of execution by a General Term differently constituted as to the justices thereof from the term which heard and decided the case was irregular. (2 R. S., § 2.)

*A. B. Gardenier*, district attorney, for defendant in error. A writ of error in a criminal case brings up for review only questions of law raised by exceptions properly taken upon the trial. (*Donohue* v. *The People*, 56 N. Y. 208; *Wilke* v. *The People*, 53 id. 525; *People* v. *Thompson*, 41 id. 1; *Shufflin* v. *The People*, 4 Hun, 16, 20; *Same* v. *Same*, 6 T. & C. 215; affirmed, 62 N. Y. 229; *Fralich* v. *People*, 65 Barb. 48; *People* v. *Casey*, 72 N. Y. 394–399; 3 R. S. 1030, § 26; Laws of 1855, chap. 337, p. 613; Laws of 1858, chap. 330, p. 556.) Detached and independent statements in no way connected with a statement given in evidence are not admissible, and there is no difference in this respect between statements made in conversation by a party to the suit, or those made by a third party. (*Crosbie* v. *Leary*, 6 Bosw. 813; 1 Phillips on Evidence, 341, marg. p. 416; *Rouse* v. *Whited*, 25 N. Y. 170; *Platner* v. *Platner*, 78 id. 90, 103.) An appellate court will not seize hold of isolated portions of a charge for the discovery of error. If the charge, as a whole, conveys to the jury the correct rule of law upon a given question, the judgment will not be reversed. (*Carnes* v. *Platt*, 41 N. Y. Sup. Ct. 435; *Caldwell* v. *N. J. Steamboat Co.*, 47 N. Y. 282; *Berry* v. *People*, 8 Weekly Dig. 15; *Poth* v. *Wells*, 29 N. Y. 471; affirming *S. C.*, 41 Barb. 194; *People* v. *Evans*, 40 N. Y. 5; *Deering* v. *Metcalf*, 74 id. 507.) A refusal to charge in the language of a party is not error. (*Poulin* v. *Brwy. and 7th Ave. R. R. Co.*, 61 N. Y. 621.) It is sufficient that the charge of a judge is in substantial accordance with the request. (*Fay* v. *O'Brien*, 36 N. Y. 11.)

EARL, J. The prisoner asks a reversal of his conviction upon various grounds, which will be separately considered:

1. The prisoner testified upon the trial in his own behalf, and gave evidence tending to show the provocations and cir-

cumstances under which he committed the alleged crime. In his charge to the jury the judge, speaking of the testimony of the accused in their own behalf in criminal cases, said : "And now that they are witnesses it by no means necessarily follows that the jury are to believe all they say, nor are they bound to reject all they say, because of the interest and feeling which they may have, and which it is but natural that they should have, in the result of such a trial as this, but they may accept such portions as they believe to be true ; they may reject portions which they believe to be false; or they may reject the whole story as a fabrication and falsehood. If the story is so improbable and so unreasonable as that, upon its face, it does not carry conviction of its truth home to the minds of the jury, the jury cannot hope to escape the consequences of a wrong result and a wrong verdict, by undertaking to predicate it upon testimony of such a character. And then there is another theory in law which is just as clear, and that is, when a party in a civil action deliberately swears false to one material part of his testimony, and the jury are satisfied that he has so sworn false, intentionally false, they are not only at liberty to reject it, but it is sometimes the duty of the jury to reject the whole. The maxim is *Falsus in uno falsus in omnibus.*" The counsel for the prisoner excepted to this maxim, and this exception is now relied upon as presenting a substantial error. The judge was not asked to translate the maxim into English, nor to express himself more clearly or fully in reference to the maxim. It was not the English portion of the charge, but the Latin maxim alone, that was excepted to.

The learned counsel for the prisoner claims that the effect of the charge was that if the jury believed that the prisoner had sworn falsely in some portion of his evidence, they were bound to disregard his whole evidence, although they believed the other portions of it to be true, and that such other portions tended to establish his innocence of the crime charged. But such is not the fair construction of the charge. The judge expressly charged that the jury could accept such parts of the prisoner's evidence as they believed to be true, and reject such

parts as they believed to be false, and he stated that it was the rule in civil cases that if the jury were satisfied that a party intentionally testified falsely in any portion of his evidence, they were at liberty to reject such portion not only, but that it was sometimes, not always, their duty to reject his whole evidence. He did not in any part of his charge say to the jury that if they were satisfied that the prisoner had in any portion of his evidence intentionally testified falsely, they were bound to reject his whole evidence. The Latin maxim, which he stated, is unquestionably founded upon common sense and sound philosophy. It is laid down as a maxim by all the text-writers upon evidence, and in many reported cases. That the maxim is a sound one for the guidance of juries no one can doubt. Even if the jury understood the dead language in which the maxim was expressed, taking the whole charge together, it cannot be supposed that they understood that they were instructed to reject any evidence which they believed to be true. Whether it would be proper for a judge to charge a jury that if they believed a witness had intentionally testified falsely in any material portion of his evidence, they should reject his entire evidence, is a question not now before us. Our views upon that question were quite fully expressed in the opinion pronounced in the recent case of *Deering* v. *Metcalf* (74 N. Y. 501), and they need no further presentation now. This exception, therefore, points out no error.

2. One of the defenses presented at the trial was that the prisoner was in such a state of mind at the time of the killing that he was not responsible for his act. In reference to this defense the judge in his charge, among other things, said: "If he was unconscious; if he did not know what he was doing upon that occasion; if his mind because of the terrible scenes which he claims he had passed through during those long and weary days preceding this tragedy had so impaired his intellect, had so diseased his brain when the occasion came when these shots were fired that carried this woman to her grave, then of course he cannot be held responsible for the consequences of this act. But if he knew, if he had the power at

the time he fired these shots, of discerning right from wrong, if he understood the nature and character of his act, then he must be held responsible so far as this defense is concerned." The learned judge then, that there might be no mistake, read to the jury portions of the opinion of ANDREWS, J., in the case of *Flanagan* v. *The People* (52 N. Y. 467), with such comments thereon as must have made plain to the jury the rule of law there laid down. He also charged the jury upon the request of the prisoner's counsel as follows: "The law does not require that the insanity or mental aberration which absolves from crime should exist for any definite period, and only that it existed at the moment when the act occurred with which the prisoner stands charged." "If the insanity or mental aberration which absolves from crime operated at the moment that the act with which the prisoner is charged was committed that is sufficient in law to absolve the prisoner from guilt and he cannot be convicted of the offense charged in the indictment or any other offense." "The people must satisfy the jury beyond all reasonable doubt that the prisoner, if he committed the act alleged in the indictment, understood the act at the moment it was committed, and that if the jury find that he did not understand it at the moment he committed it, if he did commit it, he cannot be found guilty of the crime charged in the indictment, or any other crime, and it is the duty of the jury to acquit him." "That the people must satisfy the jury beyond all reasonable doubt that at the moment the act alleged in the indictment was committed by the prisoner, if he did commit it, he had reason, perception and understanding sufficient to enable him to discern right from wrong, and that if he had not, it is the duty of the jury to acquit him." "That it is the duty of the people to satisfy the jury beyond all reasonable doubt that at the moment the act alleged in the indictment was committed by the prisoner, if he did commit it, he had reason, perception and understanding sufficient to enable him to discern right from wrong with respect to that particular act, and if he did not, the jury must acquit." "That the people must satisfy the jury beyond all reasonable doubt, that at

the moment the act alleged in the indictment was committed, the prisoner, if he did commit it, had sufficient reason and will, under all the circumstances as they may be found to have been proved, to form and have a criminal intent and purpose, and that if he had not, the jury must acquit."

The counsel for the prisoner also requested the court to charge as follows : " That the people must satisfy the jury, beyond all reasonable doubt, that at the moment the act alleged in the indictment was committed by the prisoner, if he did commit it, he had reason, perception and understanding sufficient to know that the laws of God and the land forbid him from committing it, and if he had not, the jury must acquit him."   In response to this request the judge said : " I charge in the language of the Court of Appeals in that respect and decline to charge in the language of the request, and adhere to my original charge," and to this the prisoner's counsel excepted, and he now presents this exception for our consideration.

We are of opinion that the jury were fully and fairly instructed as to the law bearing upon the mental condition and the legal responsibility of the prisoner.   Every thing is included in the charge, more than once given, that the test of responsibility is the capacity of the prisoner to distinguish between right and wrong at the time of and with respect to the criminal act complained of.   The laws of God and the land are the measure of every man's act and make it right or wrong, and it is right or wrong, as it corresponds with such laws.   When it is said that a prisoner must, at the time of the alleged criminal act, have sufficient capacity to distinguish between right and wrong with respect to such act, it is implied that he must have sufficient capacity to know whether such act is in violation of the law of God, or of the land, or of both.   It is not the duty of the trial judge to present the matter to the jury in every possible phase and in every form of language which the ingenuity of counsel can devise.   By such subtle, metaphysical distinctions the minds of the jury would be confused rather than enlightened or instructed.

3. The charge of the judge in respect to the evidence given by the prisoner of his good character is also complained of, but this portion of the charge was not excepted to and we cannot, therefore, review it. (*Wilke* v. *The People*, 53 N. Y. 525; *People* v. *Casey*, 72 id. 393; *Buel* v. *The People*, 78 id. 492.)

4. A witness, Hoes, was called on the part of the people, and testified to a conversation he had with the prisoner in the jail where he was confined. Afterward, on his cross-examination the counsel for the prisoner put this question to him : " Before the conversation which you swear you had with Moett in jail, before that time in another conversation which you had with him did he say to you just before he shot her, she plunged at him with a pick-axe ? " The district attorney objected " to proving any statements of the prisoner on other and different occasions from those inquired into by the people." The court then said : " It is not claimed to be any part or portion of defendant's statements already given — is that so ? " Prisoner's counsel replied : " No," and the judge then excluded the question and prisoner's counsel excepted to the exclusion. This was a mere attempt of the prisoner to prove his own declarations in his own behalf, and the question was, therefore, clearly incompetent. There was no claim that at the time he was in jail he was afflicted with any aberration of mind, and hence the question could not be allowed, and obviously was not put for the purpose of showing the condition of his mind. It was put to elicit an important fact bearing upon his defense of justifiable homicide, and for that purpose it was inadmissible.

We have now considered all the objections made to proceedings upon the trial. But a still further point is made on behalf of the prisoner. He was sentenced to be hung on the 19th day of March, 1880, and before that time the sentence was, by the governor, respited until the 30th day of April, 1880. Before the latter date a writ of error and stay of execution were granted by a justice of the Supreme Court. The case was argued at the General Term before Justices LEARNED, BOCKES and WESTBROOK, and by them the conviction was affirmed on the 17th day of November, 1880. Thereafter, at a General

Term constituted by Justices LEARNED, BOCKES and BOARDMAN on the 26th day of November, a writ of *habeas corpus* was issued to bring the prisoner before such General Term on the 27th day of November, on which latter day, the prisoner being produced, the court sentenced him to be hung on the 7th day of January, 1881. A writ of error with stay of proceedings was granted to bring his case for review to this court. It is now objected that the General Term had no right to sentence the prisoner, and particularly that a General Term differently constituted from that which heard and decided the case had no right to sentence him.

This objection was not noticed by the counsel for the people on the argument before us, and we have not, therefore, the light which he might have thrown upon it. There is some confusion and uncertainty in the statutes relating to the duty of a General Term after affirmance of a conviction for murder where judgment has been pronounced and the day for its execution has passed. Unless we have overlooked some statute to which our attention has not been called, we are of opinion that such duty is regulated by 2 R. S. 659 (§§ 23 and 24) and these sections are as follows:

" 23. Whenever, for any reason, any convict sentenced to the punishment of death shall not have been executed pursuant to such sentence, and the same shall stand in full force, the Supreme Court, on the application of the attorney-general or of the district attorney of the county where the conviction was had, shall issue a writ of *habeas corpus* to bring such convict before such court, or if he be at large, a warrant for his apprehension may be issued by the said court, or any justice thereof."

" 24. Upon such convict being brought before the court, they shall proceed to inquire into the facts and circumstances, and, if no legal reasons exist against the execution of such sentence, they shall sign a warrant to the sheriff of the proper county commanding him to do execution of such sentence at such time as shall be appointed therein, which shall be obeyed by such sheriff accordingly."

When this case was before the General Term it was precisely

within these provisions. After the prisoner was brought before the judges there, and they had inquired into the facts and circumstances, they should have signed a warrant directed to the sheriff commanding him to execute the sentence. It was probably not strictly regular for them again to pass judgment upon the prisoner. That had been done at the Oyer and Terminer and that judgment was affirmed and in full force. But it did no harm to pronounce the same judgment again, and that did not vitiate the prior judgment which had been affirmed. (*Matter of Ferris*, 35 N. Y. 262.) The warrant was probably signed and delivered to the sheriff and the passing of sentence was a needless, but entirely harmless ceremony. It matters not that the same judges who heard the case upon the review did not constitute the court when the sentence was passed and the warrant was, as we may assume, signed. It is sufficient that the court was legally constituted.

The judgment should be affirmed and the case remitted to the General Term of the Supreme Court that proceedings may there be taken under the same section of the Revised Statutes above referred to.

All concur, except Folger, Ch. J., absent.

Judgment affirmed.