THE STATE, DEFENDANT IN ERROR, v. JESSE SAMUELS,
PLAINTIFF IN ERROR.

Argued February 20, 1918—Decided July 31, 1918.

The application of the rule *"falsus in uno, falsus in omnibus,"* can only be properly invoked when the false testimony or statement is willfully or knowingly or intentionally given or made concerning a material fact in the case; and an instruction to a jury that if a witness has made a false statement or testified falsely relating to a material fact in the case, the jury may reject all or any part of the testimony of that witness, without a qualification that such false testimony is willfully, knowingly or intentionally false, is erroneous.

On error to the Atlantic County Quarter Sessions.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and KALISCH.

For the plaintiff in error, *Bourgeois & Coulomb.*

For the defendant in error, *Charles S. Moore.*

The opinion of the court was delivered by

KALISCH, J. The plaintiff in error was convicted in the Atlantic County Quarter Sessions upon an indictment charging him with having obtained money under false pretences. From the judgment on this conviction he has appealed to this court. The case is before us on assignments of errors and under section 136 of the Criminal Procedure act.

This judgment must be reversed for an error in the judge's charge prejudicial to the defendant. The fifth assignment of error is founded on an exception taken, by counsel of defendant, to that portion of the charge wherein the judge instructed the jury, as follows: "If you believe that any witness has made a false statement with respect to any material fact bearing on the issue involved in this case, you may dis-

regard all of the testimony of such witness or you may dis-
regard such portion of the testimony as you believe to be
untrue and accept as truthful that which remains." This
was clearly an erroneous and harmful declaration of the rule,
and was condemned by this court in *State* v. *Dugan*, 84
*N. J. L.* 603, 606; affirmed by the Court of Errors and
Appeals, 85 *Id.* 730.

Counsel of the state attempts to defend the legal accuracy
of this instruction by insisting that the present case is to be
distinguished from the Dugan case, *supra*, in that, in the case
at bar, the court did not use the word "untrue," which was the
term used in the Dugan case, but used the term "false state-
ment." This latter declaration is but partially accurate.
While it is true that the trial judge used the term "false
statement," he defined what he meant thereby when in im-
mediate connection therewith he told the jury: "You may
disregard all of the testimony of such witness or you may
disregard such portion of the testimony as you believe to be
untrue and accept as truthful that which remains." For
the state it is further insisted that the term "false statement"
is entirely different in meaning from the words "untrue state-
ment." That the word "false" as here used generally imports
willfulness. No reason is advanced for this assertion. We
find no such distinction recognized by lexicographers. "False"
and "untrue," as adjectives, are stated by them to be
synonymous terms. The standard dictionaries give to these
words, as adjectives, the same signification. Whether or not
in common usage of the term "false statement" or "untrue
statement" connotes "willfully and knowingly" is unim-
portant. If there is such an implication there can be no
substantial differentiation arising from the terms used, be-
cause it requires the same conjunction of will to make a
conscious untrue statement as it does a conscious false state-
ment. In either case, however, willfulness is not inherent,
but a condition or state of mind preceding the making of the
conscious false or untrue statement. It is, therefore, of the
utmost importance when using the term "false statement" in
a legal proceeding not to permit the phrase to bear the im-

port of willfully false, because whether or not it was willfully false becomes a question of fact for the jury to decide in passing upon the credibility of the witness regarding his entire testimony.

Professor Wigmore, in discussing the maxim, *"falsus in uno, falsus in omnibus,"* in volume 2, paragraph 1013, of his excellent treatise on the law of evidence, says: "The notion behind the maxim is that though a person may err in memory or observation or skill upon one point, and yet be competent upon others, yet a person who once deliberately mis-states, one who goes contrary to his own knowledge or belief, is equally likely to do the same thing repeatedly and is not to be reckoned with at all, hence it is essential to the application of the maxim that there should have been a conscious falsehood." On this same subject the text in 40 *Cyc.* 2588, 2589, reads as follows: "The fact that a witness has sworn falsely to a material fact does not authorize the disregarding of the rest of his testimony where the falsehood is due to mistake and not to willfulness. The mere falsity of the statement does not warrant an imputation of willful perjury where it might reasonably have been the result of a mistake."

The cases seem to be in harmony on the point that the application of the rule *"falsus in uno, falsus in omnibus"* can only be properly invoked when the false testimony or statement is willfully or knowingly or intentionally given or made concerning a material fact in the case; and that an instruction to a jury that if a witness has made a false statement or testified falsely, without qualifying it by willfully, knowingly or intentionally, relating to a material fact in the case, the jury may reject all or any portion of the testimony given by such witness, is erroneous. *Ducharme* v. *Holyoke St. Ry. Co.*, 203 *Mass.* 384; 89 *N. E. Rep.* 561; *Chicago & S. L. R. R. Co.* v. *Kline,* 77 *Id.* 229; *Pauton* v. *People,* 114 *Ill.* 505; 2 *N. E. Rep.* 411; *Moett* v. *People,* 85 *N. Y.* 373; *Childs* v. *State,* 76 *Ala.* 93; *Prater* v. *State,* 107 *Id* 26; *Smith* v. *State,* 75 *So. Rep.* 627.

The case of *State* v. *Martin* (*Court of Errors and Appeals*), 77 *N. J. L.* 652, relied on by counsel of the state, as supporting his contention, does not lay down a rule contrary to that

which is expressed in the text-books and cases above cited. An examination of the case last referred to shows that the question here discussed was not raised; and, that when Mr. Chief Justice Gummere, in speaking for the court, in the course of his opinion, said, that the jury having found "they had testified falsely, upon this material part of the case, it was justified in disbelieving their statement that Clara H. Woodward was the person whose money was loaned," he was giving a simple description of what the jury found upon the evidence and not attempting to formulate any rule for the guidance of a jury. Besides the expression used does not exclude the notion that the jury, in finding that the witnesses testified falsely, was controlled by the fact that the witnesses did so consciously.

The California cases, to which allusion has been made as holding the contrary view to that adopted here by us, are in the first place controlled by a statute peculiar to the State of California, and, secondly, the construction placed upon the word "false" by the courts of that state, when applying the rule of the statute, appears to us to be against the decided weight of the judicial opinion of the courts of this country. But we need pursue this subject no farther. We have already sufficiently pointed out that even if the term "false statement" connotes "willfully false" the same cannot be said of the term "untrue;" yet, nevertheless, the trial judge, in plain words, instructed the jury that it could disregard such portion of the testimony as it believed to be untrue, and accept as truthful that which remains. Having reached the result that the judgment under review must be reversed for the error in the judge's charge, we find it unnecessary to express any opinion upon the other matters assigned as errors.

The judgment is reversed, and a *venire de novo* awarded.