# NEW YORK

# CRIMINAL REPORTS.

## Supreme Court—General Term—First Department.

*October*, 1885.

## PEOPLE *v.* REAVEY.

LARCENY—INDICTMENT—EVIDENCE—CHARGE—CONDUCT OF
TRIAL.

An averment in an indictment for larceny, that the accused obtained from
complainant "the sum of two hundred and seventy-five dollars in
money, lawful money of the United States, and of the value of two
hundred and seventy-five dollars, of the proper money, goods and
chattels and personal property of" complainant, and that the accused
did "feloniously obtain the said money of the property, moneys, goods
and chattels and personal property of" complainant, is a sufficient de-
scription of the money alleged to have been obtained.

All that the indictment need contain as to the grand jury, under the Code
of Criminal Procedure, is the statement that the grand jury of the
county, where the indictment is found, or, if in a city court, of the city
in which the court was held, accuse the defendant of the crime alleged
in it.

An averment in an indictment that the pretenses therein set forth, as made
use of by defendant, were not only false, but were known to him to be
false at the time they were made, and were false and fraudulent, is
sufficient.

The obtaining by an attorney of money or property by false or fraudulent
representations, is not governed by section 148 of the Penal Code, but is
larceny under section 528 of that Code.

Upon the trial of defendant for larceny by obtaining two hundred and sev-
enty-five dollars by false pretenses and representations, proof was given
that, by various false representations relating to the same subject-mat-
ter, defendant obtained at different times several small sums, and finally
one hundred and sixty-five dollars. *Held*, that proof of the obtaining

the smaller sums by the false representations, was competent upon the question of defendant's intent.

Whether the prosecution should be required to elect upon the taking of which specific sum it would proceed, is, in a case of this character, in the discretion of the trial court.

Upon the request of the defendant that the prosecution should be required to elect upon the taking of which sum it would proceed, the trial judge said he would see what he would do as the trial progressed, and that he would decide the question before the case went to the jury. No objection to this course was taken by defendant. The judge did nothing in the matter, and no further request was made by defendant. *Held*, that by his acquiescence, defendant was prevented from assigning this course of the judge as error on appeal.

After evidence of good character had been given in favor of defendant, the prosecution called the defendant—who had already testified in his own favor, and had also been cross-examined in rebuttal—and asked him, under objection, whether he had been suspended by the Supreme Court from his office as an attorney and counsellor. *Held*, that this was proper, being proof of a specific fact tending to affect his credit as a witness.

Specific facts cannot be proved by other witnesses for the purpose of discrediting a witness, but he may himself be interrogated as to such facts for that purpose; and this rule applies to a defendant on trial under an indictment.

In the absence of any suggestion or request, the trial judge is not obliged to explain to the jury the extent of the punishment provided by law for the offense for which defendant is on trial.

Where the case on appeal does not disclose any failure on the part of the trial judge to admonish the jury at each adjournment, as required by section 415 of the Code of Criminal Procedure, such failure will not be presumed.

Evidence for and against the defendant on the question of character having been given, the attention of the jury was called by the trial judge to the evidence of bad character given against defendant, and the jury were told that they should take all the evidence as to character into consideration, and give it the weight it was entitled to. *Held*, no error.

To what extent the jury should disregard the testimony of a witness who has willfully perverted the truth, or of one who is mistaken as to a fact, is a question for them to consider and determine. There is no rule of law that the entire testimony of such a witness must be disregarded

If the prosecution was instituted in malice, that is a fact the jury should take into consideration.

The rule that the evidence must exclude every hypothesis but that of guilt, and be consistent with the facts, applies to circumstantial evidence, and not to the positive and direct evidence of living witnesses.

The trial court is not required, in charging the jury, to subdivide the point of reasonable doubt by limiting it to any particular branch of the case.

Proof that, during an interval in the trial, a juror in attendance upon the court, but not impanelled in the case, after talking with complainant, went across the room and talked with one of the jurors who sat in the case, furnishes no ground for a new trial in the absence of evidence that the conversation referred to the case, and where the defendant, after having knowledge of this fact, made no objection to the juror continuing to sit in the case.

APPEAL by defendant, Alexander H. Reavey, from a judgment of the Court of General Sessions of New York, of 6th January, 1885, Hon. RUFUS B. COWING presiding, convicting him of larceny, and also from orders of that court of the same date, denying motions of defendant for a new trial, and in arrest of judgment.

The facts are set forth in the indictment, which was in the following form:

The grand jury of the city and county of New York, by this indictment, accuse Alexander H. Reavey of the crime of grand larceny in the second degree, committed as follows:

"The said Alexander H. Reavey, late of the first ward of the city of New York, in the county of New York aforesaid, on the ninth day of February, in the year of our Lord one thousand eight hundred and eighty-four, at the ward, city and county aforesaid, with force and arms, with intent to deprive and defraud one Katherine Von Reitzenstein of the property hereinafter mentioned, and of the use and benefit thereof, and to appropriate the same to his own use, did then and there feloniously, fraudulently and falsely pretend and represent to the said Katherine Von Reitzenstein, that he had then lately before commenced an action for absolute divorce in the name of the said Katherine Von Reitzenstein, against her husband, Oscar Hugo Von Reitzenstein, in the Court of Common Pleas, in and for the city and county of New York, and had caused a summons therein to be served upon the said Oscar Hugo Von Reitzenstein, and had paid the sheriff of the city and county of New York as his fee for such service the sum of fifteen dollars; that said action, through the error of said Katherine Von Reitzenstein in failing to give the proper name of her said husband, had been commenced against the said Oscar Hugo Von

Reitzenstein as Oscar Hugo Reitzenstein; that the said Oscar Hugo Von Reitzenstein had taken advantage of such error, and that it would be necessary to amend the record of said action, and that the same would necessitate the payment of ten dollars costs.

"That he, the said Alexander H. Reavey, had performed for and on behalf of the said Katherine Von Reitzenstein, numerous and valuable services in the course and conduct of the said action and that the same was then and there progressing favorably to the interests of the said Katherine Von Reitzenstein, and that he was then about to enter judgment in her favor for an absolute divorce from the said Oscar Hugo Von Reitzenstein; that, in order to receive such judgment, it was then and there necessary that the said Katherine Von Reitzenstein should pay him, the said Alexander H. Reavey, the sum of one hundred and sixty-five dollars; and the said Katherine Von Reitzenstein, then and there believing the said false and fraudulent pretenses and representations so made as aforesaid by the said Alexander H. Reavey, and being deceived thereby, was induced, by reason of the false and fraudulent pretenses and representations so made as aforesaid, to deliver, and did then and there deliver, to the said Alexander H. Reavey, a large sum of money, to wit: the sum of two hundred and seventy-five dollars in money, lawful money of the United States and of the value of two hundred and seventy-five dollars of the proper moneys, goods, chattels and personal property of the said Catharine Von Reitzenstein; and the said Alexander H. Reavey did then and there feloniously obtain the said sum of money of the proper moneys, goods, chattels and personal property of the said Katherine Von Reitzenstein from the possession of the said Katherine Von Reitzenstein by color and by aid of the false and fraudulent pretenses and representations aforesaid, and with intent to deprive and defraud the said Katherine Von Reitzenstein of the same, and of the use and benefit thereof, and to appropriate the same to his own use; whereas, in truth and in fact, the said Alexander H. Reavey had not then lately before commenced any action for absolute divorce in the name of the said Katherine Von Reitzenstein against her said husband in the Court of Common

Pleas, in and for the city and county of New York, or in any other court, and had not caused any summons therein to be served upon the said Oscar Hugo Von Reitzenstein, and had not paid to the said sheriff, as his fee therefor, the sum of fifteen dollars, or any sum of money whatever; and, whereas, in truth and in fact, such action had not been commenced against the said Oscar Hugo Von Reitzenstein as Oscar Hugo Reitzenstein, through the error of the said Katherine Von Reitzenstein in failing to give the proper name of her said husband, and the said Oscar Hugo Von Reitzenstein had not taken advantage of any such error, but, in truth, no such error had been made; and, whereas, in truth and in fact, it would not be necessary to amend any record of any action whatever on account of the pretended premises aforesaid, and the same would not necessitate the payment of ten dollars costs, or any sum of money whatever as costs; and, whereas, in truth and in fact, the said Alexander H. Reavey had not performed for, and on behalf of the said Katherine Von Reitzenstein, numerous and valuable services in the course and conduct of the said action, and had not performed any services whatever, for or in her behalf therein; and, whereas, in truth and in fact, the said action was not then and there progressing favorably to the interests of the said Katherine Von Reitzenstein, and he, the said Alexander H. Reavey, was not then about to enter judgment in her favor for an absolute divorce from the said Oscar Hugo Von Reitzenstein; and, whereas, in truth and in fact, it was not then and there necessary, in order to secure such a judgment, that the said Katherine Von Reitzenstein should pay him, the said Alexander H. Reavey, the sum of one hundred and sixty-five dollars; and, whereas, in truth and in fact, the pretenses and representations, so made as aforesaid by the said Alexander H. Reavey to the said Katherine Von Reitzenstein, was and were, then and there, in all respects, utterly false and untrue, as he, the said Alexander H. Reavey, at the time of making the same then and there well knew.

"And so the grand jury aforesaid, do say, that the said Alexander H. Reavey, on the day and year first aforesaid, at the ward, city and county aforesaid, in the manner and form afore-

said, and by the means aforesaid, with force and arms, the sum of money aforesaid, to wit: the sum of two hundred and seventy-five dollars in money, lawful money of the United States, and of the value of two 'lred and seventy-five dollars, of the proper moneys, goods, chattels and personal property of the said Katherine Von Reitzenstein, then and there feloniously did steal against the form of the statute in such case made and provided, and against the peace of the people of the State of New York, and their dignity."

The action came on for trial, November 24, 1884, in the Court of General Sessions.

The people introduced evidence tending to prove that some of the pretenses set out in the indictment were made by the appellant at different times between the middle of December, 1883, and the 5th of February, 1884, and that, from time to time, during that period, the complainant paid to the appellant different sums of money, amounting in all to about two hundred and fifty dollars.

The people also introduced evidence tending to prove that some of the pretenses set out in the indictment were false.

The appellant asked the court to require the people to elect upon which one of the several larcenies charged by the complainant in her testimony, they would ask for a conviction. This request was not granted, and all the evidence as to the several payments was submitted to the jury.

The people having rested their case, the appellant moved the court to advise the jury to acquit, upon the ground that the evidence was not sufficient to warrant a conviction, which motion was denied.

The appellant, testifying in his own behalf, admitted some of the payments, and claimed that the moneys were received by him in good faith as parts of the amount which the complainant had agreed to pay him for fees and disbursements in an action for divorce, and that he had endeavored with reasonable diligence to serve process and prosecute such an action in her behalf. He denied that he had made any false representations or practiced any fraud, and introduced evidence of good character.

After defendant had rested his case, he was recalled by the people and asked against his objection, whether in the year 1879 he was suspended from practice as a lawyer by the Supreme Court.

The jury returned·a verdict of guilty.

Afterwards on the 26th day of November, 1884, defendant moved the court to set aside the verdict and grant a new trial upon the following grounds: *First,* because the court had misdirected. the jury in matters of law, and the defendant had, at the trial, excepted to such misdirection; *Second,* because the court erred in admitting improper evidence against the objection of the defendant; *Third,* because the court erred in refusing to instruct the jury as requested by the defendant, and the defendant had at the trial excepted to such refusal; *Fourth,* because the court erred in permitting evidence of several distinct larcenies to be given to the jury, and in refusing to require the people to elect upon which larceny they would ask for a conviction, and the defendant had at the trial excepted to such permission and refusal; *Fifth,* because the verdict was contrary to law; *Sixth,* because the verdict was clearly against the evidence; *Seventh,* because the jury had been guilty of misconduct, by which a fair and impartial consideration of the case had been prevented, as more fully appears by the following affidavit, which was read and filed in support of the said motion.

"*Alexander H. Reavey,* being duly sworn, says that the trial of this action was commenced in the above entitled court on the 24th day of November instant, and concluded on the 25th day of the same month. On the said 25th day of November, a few minutes before the court was opened, one Plato, a juror attending said court, but not serving as a juror in this action, approached the prosecuting witness, Katerina Von Reitzenstein, and the witness for the people, Mrs. Strong, in the court room, and held a whispered conversation for several minutes with the said witnesses. During said conversation said Plato and said witnesses frequently turned and looked intently at affiant, who was present in the court room at a little distance from them, and affiant was convinced from the circumstances under which said conversation was held, and therefore alleges that the said Plato,

Von Reitzenstein and Strong were, at the aforesaid time and place, conversing together about affiant and about this case. Immediately after the close of the said conversation, the said Plato went across the court room and entered into conversation with one Goodhart, a juror, serving upon the trial of this case, and continued said conversation until the said Goodhart was called with the other jurors into the jury box, for the purpose of proceeding with the trial of this case; and affiant believes and alleges that the said Plato and Goodhart were then and there conversing together about this case."

The defendant asked the court to call the jurors, Plato and Goodhart, they being then present in court, and interrogate them in respect to the matters set forth in the foregoing affidavit. This request the court denied. No other evidence was given in regard to the alleged misconduct of the jury.

The defendant also moved the court that judgment should be arrested for the following reasons: *First*, because the facts stated in the indictment do not constitute a crime; *Second*, that the indictment is not sufficient in law to support a judgment; *Third*, for other errors apparent upon the face of the record.

Of these motions the court took time to consider; and afterwards, on the 6th day of January, the court denied the motions of the defendant for a new trial and in arrest of judgment, and to the decision denying the said motions the defendant duly excepted, and the court thereupon pronounced judgment.

*James M. Brady* and *A. Suydam*, for defendant, appellant.— I. The indictment is insufficient in law. The facts therein stated do not constitute a crime. *a.* The description of the property alleged to have been stolen, is insufficient and void for uncertain. A description of money *eo nomine* is bad. 1 *Bish. Crim. Proc.* 3d ed. § 703; Barton *v.* State, 29 *Ark.* 68; Smith *v.* State, 33 *Ind.* 159; Leftwich *v.* Commonwealth, 20 *Gratt.* 716; Merwin *v.* People, 26 *Mich.* 298; Ridgeway *v.* State, 41 *Tex.* 231; Merrill *v.* State, 45 *Miss.* 651; State *v.* Carson, 20 *La. An.* 48; Rhodus *v.* Commonwealth, 2 *Duvall (Ky.)*, 159; Martinez *v.* State, 41 *Tex.* 126; State *v.* Longbottoms, 11 *Humph.* 39; People *v.* Ball, 14 *Cal.* 101; Miller *v.* People, 21 *Hun,*

444, and cases cited; Low *v.* People, 2 *Park.* 37; State *v.* Hurst, 11 *W. Va.* 54; State *v.* Kube, 20 *Wis.* 217; People *v.* Jackson, 8 *Barb.* 637; Hamblett *v.* State, 18 *N. H.* 384; Lord *v.* State, 20 *Id.* 404; State *v.* Hinckley, 4 *Minn.* 345; State *v.* Murphy, 6 *Ala.* 846; People *v.* Bogart, 36 *Cal.* 245; Boyle *v.* State, 37 *Tex.* 359. If the substance of an offense be charged, the grand jury may omit a matter of description unknown to them, but their want of knowledge must be averred. Haskins *v.* People, 16 *N. Y.* 344; People *v.* Taylor, 3 *Den.* 91; Commonwealth *v.* Sawtelle, 11 *Cush.* 142; Rex *v.* Robinson, *Holt's N. P.* 595; Rex *v.* Walker, 3 *Camp.* 264; Commonwealth *v.* Hill, 11 *Cush.* 137; Reed *v.* State, 16 *Ark.* 499; Hays *v.* State 13 *Mo.* 246; Merwin *v.* People, 26 *Mich.* 298; People *v.* Poucher, 1 *N. Y. Crim.* 544. It is only in an indictment against a public officer for embezzlement, that the larceny or embezzlement of money, *eo nomine,* may ·be charged. Bork *v.* People, 16 *Hun.* 476; People *v.* McKenny, 10 *Mich.* 5b; State v. Stimson, 4 *Zab.* 478. This point is well raised on motion in arrest of judgment; for, if the description of the property be void for uncertainty, the legal effect is precisely as if there were no description, and the indictment charges the larceny of nothing. · In most of the cases above cited, the point has been raised in arrest of judgment, and in none of· them is it held that it may not properly be so raised. *b.* The words "take and carry away" are material in charging larceny. Commonwealth *v.* Adams, 7 *Gray,* 27; Commonwealth *v.* Campbell, *Addis.* 232. *c.* The alleged false pretenses· are not sufficiently negatived. The indictment should have averred that the appellant had not commenced an action on behalf of the complainant "for an absolute divorce," or "for any other purpose," or to that effect; for, if he had been prosecuting an action, say for a limited divorce, that would have afforded an adequate motive for the payment of the money, and the complainant could not have been defrauded.

II. The evidence was insufficient to warrant a conviction. There was no evidence whatever of the kind and character of the money paid. The court will take judicial notice that we· have several kinds of currency and coin commonly circulating as money, some of which are lawful money—legal tender—

others not. Some evidence should have been given as to the kind of money paid. Higgins v. People, 7 *Lans.* 110; People v. Caryl, 12 *Wend.* 547; Johnson v. People, 4 *Den.* 364; People v. Jones, 5 *Lans.* 340; Low v. People, 2 *Park,* 37; Collins v. People, 39 *Ill.* 233; People v. Linn, 23 *Cal.* 150. There was no clear proof as to the payment of more than twenty-five dollars at any one time, except the last payment of one hundred and sixty-five dollars. As to the hundred and sixty-five dollars, it is not clear whether it was paid in money or by cheque. It is very clear that this hundred and sixty-five dollars was paid upon the faith of a promise to get the decree as a pretence concerning a future event. People v. Tompkins, 1 *Park.* 244.

The indictment charges that all the false pretences were made concerning an action pending in the Court of Common Pleas, and then avers that there was no such action in that court "or in any other court." The evidence wholly fails to prove that the pretences were made concerning an action in the Common Pleas. And there is no evidence whatever tending to prove that no action was brought in any other court.

The evidence fails to show that the alleged pretences were the means of inducing the complainant to part with her money.

There is no proof of an intent to defraud. In order to establish such an intent it was necessary to prove not only that the appellant had not commenced any action, but that he *never meant* to commence one. The evidence does not warrant such a conclusion. The case was in his hands *less than two months.*

III. The court erred in not compelling the people to elect upon which larceny they would ask for a conviction. The alleged pretences were made at different times, and upon the making of each separate pretence a separate sum of money was obtained. Assuming the sufficiency of the indictment and evidence, the obtaining of each separate sum was a distinct larceny. They could not have been separately charged in the indictment. Boland v. People, 25 *Hun,* 423, 427 and cases cited; Coates v. People, 4 *Park,* 662; State v. Smith, 2 *Green's Crim. Rep.* 462; Rosekrans v. People, 5 *T. & C.* 467; Harris v. People, 6 *Id.* 206; Engleman v. State, 2 *Cart. (Ind.),* 91; People v. Davis, 56 *N. Y.* 95; Woodford v. People, 62 *Id.* 117. Offenses which

are distinct in fact as well as in law may not be charged in the same indictment. People v. Wright, 9 *Wend.* 193; People v. Adams, 17 *Id.* 475; People v. Bailey, 23 *Cal.* 577; State v. Fidment, 35 *Iowa*, 541; Reed v. People, 1 *Park.* 481; State v. Shields, 8 *Blackf.* (*Ind.*) 151; Commonwealth v. Symonds, 2 *Mass.* 163; State v. Gary, 36 *N. H.* 359.

If any larceny was committed, the obtaining of each separate sum of money was a distinct larceny, and it was error to submit the evidence of the several payments to the jury, without an instruction to the effect that they were confined to the consideration of a single payment as constituting a larceny, and that the other payments were to be considered only as bearing upon the question of intent. People v. Tweed, 1 *N. Y. Crim.* 97; People v. Baker, 2 *Id.* 218; People v. Howe, 2 *T. & C.* 383; Smith v. State, 47 *Ala.* 543; Wood v. People, 59 *N. Y.* 117; People v. Dunn, 90 *Id.* 104.

The appellant's request to restrict the people to a single charge was promptly made as soon as the evidence warranted it, and was renewed as soon as the people rested. It should have been granted before the appellant was required to open his case.

IV. The court erred in requiring the appellant to answer the questions concerning his suspension by the Supreme Court. These questions were not within the rules laid down by the Court of Appeals. They did not call for evidence of the conviction of any crime, or of any specific acts pertinent to the issue or tending to establish a bad moral character. People v. Brown, 72 *N. Y.* 571; People v. Casey, *Id.* 393; People v. Crapo, 76 *Id.* 288; Ryan v. People, 79 *Id.* 594; People v. Noelke, 1 *N. Y. Crim.* 495; People v. Irving, 2 *Id.* 171. The appellant had been cross-examined and dismissed, and was recalled by the people in rebuttal, and upon the question of character. And it is distinctly put to the jury in that light by the court. Neither good nor bad character can be proved by specific acts or charges. Smith v. State, 47 *Ala.* 540; McCarty v. People, 51 *Ill.* 231; Gordon v. State, 3 *Ia.* 410; Engleman v. State, 1 *Cart.* (*Ind.*) 91; People v. White, 14 *Wend.* 111. The explanation given by the appellant cannot be considered

to have rendered evidence harmless, especially considering the charge of the court. The intendment of law is, that an error in the admission of evidence is prejudicial to the party objecting, and is ground for reversal unless the intendment is clearly repelled by the record. Nolan v. Brooklyn City & N. R. R. Co., 87 *N. Y.* 68; Coleman v. People, 58 *Id.* 555; Stokes v. People, 53 *Id.* 164; People v. Gonzalez, 35 *Id.* 49; Vandevoort v. Gould, 36 *Id.* 639. If the evidence was admissible at all, the record should have been produced. The appellant distinctly made this point in his answer to the question.

V. The maxim, *falsus in uno, falsus in omnibus,* is *a rule of law,* and should have been given to the jury as such. La Santissima Trinidad, 7 *Wheat.* 339; People v. Davis, 15 *Wend.* 602; Dunlop v. Patterson, 5 *Cow.* 243; Brett v. Catlin, 47 *Barb.* 404; Butler v. Truslow, 55 *Id.* 293; Knowles v. People, 15 *Mich.* 408; Campbell v. People, 3 *Kan.* 488; Moett v. People, 85 *N. Y.* 373; Deering v. Metcalf, 74 *Id.* 501, and cases cited.

VI. Error was committed, in the trial judge not charging the jury what punishment the statute prescribed for the offense charged. People v. Cassiano, 1 *N. Y. Crim. Rep.* 505.

VII. The trial having consumed more than one day, and the court having failed and neglected to admonish the jury at the adjournment against conversing with each other or with any person, the conviction is, in contemplation of the statute, illegal and void. *Code of Crim. Pro.* § 415.

*Randolph B. Martine,* district attorney (*De Lancey Nicoll,* assistant), for the people, respondent.—I. The false pretenses, being all connected, were properly charged in the indictment as being on a single day. 1 *Bish. Crim. Pro.* § 397; Cowley v. People, 83 *N. Y.* 472.

II. The various stealings charged in the indictment being in pursuance of a scheme to defraud, it was proper to make proof of all, and the complainant was not obliged to elect. 1 *Bish. Crim. Pro.* § 397, and cases cited; People v. Lyon, 1 *N. Y. Crim.* 400; Reg v. Henwood, 11 *Cox C. R. Cas.* 526.

III. The question asked by the defendant on cross-examination was proper. It related to a specific fact which tended to

discredit the witness, and to impeach his moral character. People *ex rel.* Phelps *v.* Oyer and Terminer, 83 *N. Y.* 460; Nolan *v.* Brooklyn R. R., 87 *Id.* 63.

DANIELS, J.—The defendant was convicted of the crime of larceny in the second degree for obtaining money by means of false representations or pretenses, as that offense has been defined by sections 528 and 531 of the Penal Code. He had been employed by the complaining witness to obtain a divorce for her, dissolving her marriage with her husband, and from time to time represented to her that the action was in different stages of progress, and finally that he had obtained a decree, which the judge still had to examine, and upon that required from her a further payment, which he received, of the sum of one hundred and sixty-five dollars. The other payments which were made were in small sums, neither of them exceeding the sum of twenty-five dollars, and as the jury found him guilty by their verdict of the crime of grand larceny, it must have been for obtaining this sum of one hundred and sixty-five dollars upon this representation. The representation itself, as well as the others made by him concerning the progress of the action, were false, and must necessarily have been known to him to be so. For while a summons had been issued in the action for service, it never had been served, no suit had in fact been commenced, and the complaint, which was at some time drawn, was never verified. There was, accordingly, sufficient proof upon which the defendant could be convicted under these sections of the Code, as well as the general principles of law applicable to this class of cases. People *v.* Baker, 96 *N. Y.* 340; 2 *N. Y. Crim.* 218. It has, however, been urged upon the argument of the appeal, that the indictment did not sufficiently describe the money which it was averred had been obtained by means of the pretenses made use of from the complaining witness. The averment is that the defendant obtained from her "the sum of two hundred and seventy-five dollars in money, lawful money of the United States, and of the value of two hundred and seventy-five dollars, of the proper money," &c., of the complaining witness, and that he did "feloniously obtain the said sum of money of the

proper moneys, goods, chattels and personal property" of this witness. Cases have been assiduously selected and presented in support of the objection that this was not a sufficient description of the money obtained by the defendant of the prosecuting witness. But as authorities were examined and followed in Miller *v.* People (21 *Hun,* 443), the indictment does not seem to have been defective in this respect. But the sufficiency of the indictment is not now to be determined by these authorities, considering and applying the technical principles of the common law; for they have been in a great measure superseded by the enactment of the Code of Criminal Procedure. And the question accordingly to be considered is not whether this indictment might in this respect be held to be defective under the preceding practice, but whether it is sufficient under the provisions of the Code of Criminal Procedure. By subdivision 2, section 275 of these provisions, no more in this respect has been required in the indictment than "a plain and concise statement of the act constituting the crime." By the succeeding section the general form of an indictment has been provided, and that requires for this purpose no more than the name of the crime and "a brief description of it as it is given by the statute." And this indictment certainly did contain as much of a description as was required to describe and designate the crime, within the language of section 528 of the Penal Code. It has further been declared by section 284 of the Code of Criminal Procedure that the indictment is sufficient in the description of the crime if it can be understood from it that the alleged crime was committed at some place within the jurisdiction of the court, prior to the finding of the indictment, and "that the act or omission charged as the crime is plainly and concisely set forth," and that "it is stated with such a degree of certainty as to enable a court to pronounce judgment upon a conviction, according to the right of the case." And it was further declared by section 285 that "no indictment is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of an imperfection in matter of form, which does not tend to the prejudice of the substantial rights of the defendant, upon the merits." This indictment was very clearly sufficient within these sec-

tions of the Code of Criminal Procedure, for it distinctly charged the defendant with, unlawfully, by means of false pretenses and representation known to him to be false, obtaining this sum of money from the complaining witness. It was framed in such a manner as clearly and distinctly to charge this offense and to be incapable of being misunderstood by the defendant when he was arraigned and tried upon it. And that it was not mis-understood appears by his own testimony, in which he acknowl-edged the receipt of this sum of one hundred and sixty-five dollars, as well as the other smaller amounts mentioned by the witness in the course of her evidence.

By the same provisions of the Code of Criminal Procedure, the objection that it does not appear by the indictment that the grand jury was drawn or sworn is fully met, for that is not now required to be stated. All that has been directed to be inserted in it concerning the action of the grand jury is by section 276 requiring the statement that the grand jury of the county in which the indictment is found accuse the defendant of the crime alleged in it. And by subdivision 2 of section 284 it has been declared to be sufficient " that it was found by a grand jury of the county, or if in a city court of the city in which the court was held."*

It was also averred in the indictment, both specially and gen-erally, that the pretenses or representations, made use of by the defendant, were not only false, but were also known to him to be false at the time when they were made, and were both false and fraudulent. The indictment, accordingly, under the law now applicable to it, and directing what it shall contain, was a sufficient indictment against the defendant.

There was no objection whatever taken during the trial to the sufficiency of the proof, as to the particular character of the money received by the defendant of the complaining witness. If there had been, it might probably have been supplied by her further examination. It was rather assumed, by the conduct of the trial, that the money paid to him was within the description contained

---

* As to omissions and defects in indictments see People *v.* Peck, 2 *N. Y. Crim. Rep.* 314.

in the indictment, and for that reason it was generally described as so much money paid or delivered by the complaining witness to the defendant. Her statement is that, on one occasion, she gave him fifteen dollars, on another twenty-five dollars, and on another ten dollars, and finally this sum of one hundred and sixty-five dollars. And the payments were, in like manner, mentioned and referred to by the defendant in the course of his own evidence; and no greater particularity of proof, in this respect, was either suggested or required by any objection made in the case. This did comply substantially with the averment in the indictment. The important and material accusation was, that he had obtained so much money from the witness, and that this evidence had clearly a tendency to establish.

There was no objection made at any time to proof being given of the payment of the smaller sums of money, or to the particular representations by which they were obtained. But if there had been, the objection must necessarily have been unavailing, for this was competent proof upon the question of the defendant's intention. The money was all applicable to one general subject-matter, and his conduct and statements concerning it were pertinent evidence, exhibiting the intention by which he was governed in obtaining the money.

After these several sums were proved to have been paid to him, the defendant's counsel requested the court to compel the district attorney to elect upon which charge he intended to prosecute. That was not done, but it was stated by the judge, presiding at the trial, that he thought he would confine the people to the charge of larceny of the one hundred and sixty-five dollars; but he did not do so at that time, but stated that he would see what he should do as the trial progressed. To this no objection was taken on the part of the defendant, but the trial apparently proceeded upon that understanding, and the proof was afterwards mainly directed to this sum of money. At the close of the people's case the same request was renewed, and the judge stated he would decide that question before the case went to the jury, and to that course no objection whatever was taken. Neither does it appear that any other action was taken upon this subject before the case was submitted to the jury. After

acquiescing as the defendant did, by his counsel, in this disposition of these repeated requests, he cannot now assign as error in the course of the trial, the omission of the court to require the district attorney to make this election.

It is probable, however, even though no disposition may have been formally made of this subject, that the case was so submitted to the jury, and that such was their understanding of the inquiry to be followed by them; for, by their verdict, they found the defendant guilty of grand larceny, which could only have been done for the unlawful obtaining of this sum of one hundred and sixty-five dollars. But if the court had omitted to require the district attorney to elect, or substantially to submit the case to the jury upon the theory that the defendant could only be convicted for obtaining this sum of money, a reversal of the judgment could not be secured upon that circumstance; for, whether the district attorney should be required to make such an election or not, upon evidence of this description, is to be determined by the sound discretion of the court before which the trial takes place. People v. Baker, 3 *Hill*, 159; Cook v. People, 2 *N. Y. Sup. Ct.* (*T. & C.*) 404; People v. Satterlee, 5 *Hun*, 167; Armstrong v. People, 70 *N. Y.* 38; Hawker v. People, 75 *Id.* 487.*

Neither was there any failure shown on the part of the court to admonish the jury, at each of its adjournments, that it was their duty not to converse among themselves on any subject connected with the trial, or to form or express any opinion thereon until the case was finally submitted to them, as was required by section 415 of the Code of Criminal Procedure. The case in no manner, either directly or indirectly, discloses any failure to comply with this direction of the Code.**

Nor was it improper to allow the fact to be shown by the defendant, on his cross-examination, that he had been suspended by the action of this court from his office as an attorney and

---

* The decision of a motion to compel the prosecution to elect on which counts of an indictment defendant should be tried may properly be deferred till the evidence on both sides is in. People v. Ward, 3 *N. Y. Crim. Rep.* 483.

** A mere inadvertent omission to give the directions required by section 415, Code Criminal Procedure, not shown to have worked injury to defendant, is not ground for a new trial. People v. Draper, 1 *N. Y. Crim. Rep.* 138.

counsellor. It was a specific fact, having a tendency to affect his credit as a witness, inasmuch as the order would not have been made without satisfactory proof of professional misconduct on his part. And that such evidence may be obtained from the defendant who offers himself as a witness in his own behalf is sustained by People *v.* Irving, 2 *N. Y. Crim. Rep.* 171; 95 *N. Y.* 541, 544–5."*

The objection that the proof could only be made by the production of the order itself was not taken at the trial, if it had been it might then and there have been obviated by the production of the order. The objection which was taken was to a different question, and then in a form too general to be of any service to the defendant, even if that question itself had been objectionable.

There was no suggestion made at the trial that the court should explain to the jury the extent of the punishment which the law provided for the offense, in case of the conviction of the defendant, and for that reason the case of People *v.* Cassiano (1 *N. Y. Crim. Rep.* 518; 30 *Hun,* 388) has no application to the present appeal.

In the same connection it has been urged that the court did not go as far as it should have gone in the charge, in explaining to the jury the effect of the evidence as to character. But while a large number of requests were presented to the court after the charge had been delivered, which were, in the main, favorably disposed of to the defendant, nothing was suggested and no exception taken upon this particular subject. The attention of the jury was directed to the fact that the evidence of good character should be taken into consideration by them — that offered on the part of the defendant, as well as that offered on the part of the people. The evidence offered on behalf of the people consisted of this fact, that the defendant had been suspended from the practice of his profession by the action of this court. And the attention of the jury was then directed to what

---

* Questions may be put to a witness as to specific facts which tend to discredit and impeach his moral character. People *v.* Noelke, 1 *N. Y. Crim. Rep.* 495; People *v.* Hoogkerk, 2 *Id.* 204; People *v.* Eckert, 2 *Id.* 470; People *v.* Elmore, 3 *Id.* 264; People *v.* Kelly, 3 *Id.* 35.

was claimed on the part of the people as to the evidence of character, and that the claim was " that he does not show affirmatively that he has that high character for probity and honesty, which should greatly weigh in his favor, and they draw your attention to the fact that the Supreme Court of this State has in one instance passed unfavorably upon his character. I am not going to comment upon the evidence as to whether it preponderates against him or in his favor. Take all the evidence into consideration, and give it such weight as you think it is entitled to." That covered the whole ground in a concise and direct manner, over which the evidence as to character had extended. The court undertook no responsibility concerning it, but left it entirely to the jury to give it such weight as they deemed proper. In the course of his evidence concerning his suspension, the defendant stated that the referee's report was favorable to him, but that he failed to appear before the court at the time when its action was taken upon his case, although he had notice served upon him for that purpose. This statement that the referee's report was favorable to him did not exonerate him from the effect of the fact of his suspension, for the court could not, and would not, have ordered it unless it had become satisfied from the evidence that he had been guilty of professional misconduct. And the action which was taken necessarily established the fact that such a conviction had been reached in the mind of the court; and all that the judge presiding at the trial did, was to direct the attention of the jury, in substance, to this fact. The court had passed unfavorably upon the defendant's professional character, and the allusion made to what was claimed on the part of the people, as to the evidence of character, was, therefore, supported by the fact. What was said upon this subject did not then meet the disapprobation of the counsel for the defendant, for he not only failed to request a further direction or observation concerning it to the jury, but failed to except to what was said by the judge. It is true that such failure to except would not preclude the defendant from relying upon this point, if it had been unfavorably disposed of as to him, upon the trial; for, by section 527 of the Code of Criminal Procedure, a new trial may be ordered when justice

may require that to be done, although no exception has been taken. But nothing was said or suggested by the judge concerning this part of the case, rendering the exercise of this authority proper on the part of the court, under the circumstances appearing.

There was a direct conflict between the evidence of the defendant and that of the complaining witness, and of at least one other witness, who testified upon the trial; and upon that the court was requested to direct the jury that, if any witness had willfully perverted the truth, they could disregard the whole of the testimony of such witness. To that the judge responded, "Yes; I do not charge it as a matter of law, but the jury have a right to consider the whole testimony." The same request was then, in substance, repeated, when the response was, "You have a right to do so, gentlemen, but I cannot instruct you as a matter of law, upon that point, that you must do so."* That, under the authorities applicable to the condition in which this case was presented to the jury, was all that could consistently be said to them. The case presented a square conflict of evidence. Whether the complaining witness, or the defendant himself, testified untruthfully, and that appears to be the fact also as to one or more of the other witnesses in the case, and whether the evidence of either should be wholly rejected and disregarded by the jury, if they found that the witness giving such evidence had testified willfully false, was a fact for them to consider and determine. If the false statement was one which contaminated the entire testimony of the witness, or indicated him or her to be entirely unreliable, then it would be right and proper that all the evidence of that witness should be rejected and excluded from consideration. While, if it necessarily included only an isolated statement, and the residue of the evidence appeared probable, and was consistent with the other evidence in the case, and was reasonably sustained as to its probability, the jury would still be at liberty to act so far upon

---

* A charge that a witness who testifies to a willful falsehood is not entitled to credit, and that the jury from that fact are authorized to disbelieve his entire testimony, is not error. People v. Petmecky, 2 N. Y. Crim. Rep. 450; 3 Id. 288.

it. The case was left to them, in this respect, in that manner, and that is all, and the most that could be required to be done for the benefit of the defendant. Deering *v.* Metcalf, 74 *N. Y.* 501, 504, 507 ; People v. Moett, 23 *Hun,* 60, and 85 *N. Y.* 373.

The court was also requested to charge that, " if the jury believe that any witness was mistaken in respect to any fact, they may disregard all of such witnesses' testimony." The judge responded : " The jury may disregard any, or all, of the testimony ; it is purely a question for the jury ; simply a question for the jury to determine." To this answer no complaint can be made on the part of the defendant. It was within their province, under the rules suggested by the court for their guidance and consideration, either to believe or reject the evidence. But if they should act beyond that rule and disregard the testimony in the case, then it was clear that no conviction of the defendant could have been secured, and he was by no possibility injured by what was said. Over this subject the court accordingly gave the jury a greater degree of liberty in his favor, than he was entitled to ask should be accorded to them.

The court was also requested to say to the jury that, if the prosecution had been instituted with malice, or with the intent to effect a return of the money, they should take that into consideration and reprobate or condemn it; and they were directed that, if the prosecution was instituted with malice, the jury should take that into consideration. The defendant excepted to that direction, but, of course, it is plain that there is nothing in the exception. The request was made that the court should charge that " the evidence must exclude, to a moral certainty, every hypothesis but that of guilt, and be consistent with all the facts, to convict." The court declined to add anything further upon this subject than had already been stated; and in that the judge was supported by the fact that he had already not only at one time, but had repeatedly, directed the jury that if they entertained a reasonable doubt as to the defendant's guilt, he was entitled to a verdict of acquittal. That was all that the law upon this part of the case required. Moreover this particular request was not appropriate to the positive evidence upon which this indictment

was tried. The rule referred to in it is applicable only to a case depending upon circumstantial evidence (People *v.* Bennett, 49 *N. Y.* 137–144) and not to a case like this, where the testimony was direct and positive and obtained from a living witness. Neither was the court bound to subdivide the point of reasonable doubt by limiting it to any particular branch of the case.[*] What the law has provided is, that when there may be a reasonable doubt upon the case, the jury shall be required to acquit, and no more than that can be required on the part of the defendant. People *v.* O'Connell, 62 *How.* 436.

It has been further insisted that the judge was in an error in stating to the jury that the uncontradicted evidence went to show that not a single step had been taken in the action to obtain a divorce, but, on attention being called to the state of the proceeding, this was corrected by the charge that if a summons was prepared and placed in the hands of a person for service, that, in law, is the commencement of an action, and that was the only step which, according to the testimony of the defendant himself, was taken at any time for the commencement of a suit to obtain a divorce.

The case was carefully, as well as minutely, presented by the judge to the jury, and no prejudice could have resulted by any possibility to defendant from any oversight, or erroneous statement, which has now been alleged in his behalf in support of the present appeal. In all respects his rights were carefully, as well as minutely, guarded, and the verdict returned by the jury was well warranted and supported by the evidence.

After the verdict was returned, and upon the hearing of the motion for a new trial, an affidavit was made by the defendant, and read in support of the motion, stating the fact that one of the jurors in attendance, but who was not drawn as such for his trial, was engaged in conversation with the complaining witness, and that the defendant supposed and believed that the conversation related to himself; that after that conversation was terminated, this juror crossed the court-room and engaged in conversation with another juror, who acted as such upon the trial.

---

[*] Walker *v.* People, 1 *N. Y. Crim. Rep.* 22.

What the conversation between these two jurors was, in no manner appears. From the affidavit it cannot be inferred that it related to this particular case. But if the defendant had reason to believe that it did, the person with whom the conversation is stated to have taken place should have been interrogated upon this subject before he was permitted to take his seat as one of the jurors. He understood all the facts at that time, and his failure to bring them forward then for the consideration of the court is a complete answer to this application, even if the affidavit itself disclosed any ground which could be relied upon in support of such a motion. There is nothing in the case on which the court can interfere in behalf of this defendant. He seems to have been properly and legally convicted, and the judgment, together with the order, should be affirmed.

DAVIS, P. J., and BRADY, J., concur.

Motion by the defendant for a reargument of this appeal.

DANIELS, J.—A prominent ground in support of the application for a reargument is that the defendant being an attorney, was improperly convicted under the indictment of the crime of larceny in the second degree. This position has been now for the first time taken in the case, and section 148 of the Penal Code is supposed to sustain it, but it clearly does not. For the misdemeanors created by this section are made to consist, first, of deceit or collusion on the part of the attorney to deceive the court or any party, in violation of the prohibition contained in section 70 of the Code of Civil Procedure; and secondly, of wilfully delaying his client's suit for his own gain, or wilfully receiving money or allowance for or on account of any money which he has not laid out or become answerable for, as that has been prohibited by section 71 of the Code of Civil Procedure. The offense created by these two subdivisions of section 148 of the Penal Code, does not include the act of obtaining money or property by the attorney by false or fraudulent representations. Such representations are set forth in the indictment as the foundation of the charge made against the defendant. They are in

no manner provided for or referred to in this section of the Penal Code, but they are included and made an offense by section 528 of the Penal Code. And when money or property may be obtained by the color or aid of fraudulent representations or pretences, and the amount or value exceeds the sum of twenty-five dollars and does not exceed five hundred dollars, under this section and section 531 of the Penal Code, the offense of grand larceny in the second degree will be committed. These sections apply alike to all persons, attorneys as well as others, who may obtain money or property by the use of false and fraudulent representations or pretences. And the case charged against the defendant in the indictment, and to prove which evidence was given upon the trial, was within these sections. It would be strikingly incongruous for the law to provide that the same act should form and be punished as a mere misdemeanor when committed by an attorney, which could be punished by imprisonment in the State prison, when committed by another person. It has not so provided and is chargeable with no such absurdity.

It has also been urged in support of the application for a reargument that the answer obtained from the witness upon the trial that he had been suspended from his office as an attorney and counsellor of the court was not elicited upon his cross-examination. But the case does not sustain that position. The defendant was placed upon the stand as a witness in his own behalf, and was first examined at large by his own counsel, then he was cross-examined by the public prosecutor and retired from the stand. Other witnesses were then sworn in his behalf and he was recalled by the people and further examined. This was a continuation of his cross-examination, and the question to which objection was taken was a proper question to be answered by him as a part of that examination. For the answer intended to be obtained, and which was in fact secured, had a tendency to discredit him as a witness in the case, and as such witness, it is well settled by the authorities that he might be examined by the prosecution concerning any fact tending to throw discredit upon his evidence. The rule upon this subject is different from that relied upon in support of this application.

For while it is true that specific facts cannot be proved by other witnesses for the object of discrediting a witness, he may still himself be interrogated as to such facts with the object of impeaching his reliability as a witness. So far as he himself is concerned no injustice can be done by permitting the examination to proceed to this extent. For he is presumed to be capable of so far qualifying his statement where that can be done, as to render the fact proposed to be obtained as little injurious to his credit as possible. And it can in *no manner operate as a surprise upon the witness himself to interrogate him concerning specific facts, as long as the examination relating to them is confined to his own evidence. That a party who is on trial under an indictment may be interrogated concerning specific acts of misconduct on his part to discredit his own evidence, has been held on so many occasions as to be at this time substantially free from controversy. Real *v.* People, 42 *N. Y* 270; People *v.* Casey, 72 *Id.* 394; People *v.* Oyer and Terminer, 83 *Id.* 436; People *v.* Irving, 2 *N. Y. Crim. Rep.* 171; 95 *N. Y.* 541.

No objection was taken on behalf of the defendant that the question to which the answer was given by the witness was propounded at any improper time or under any circumstance not permitting it to be put to the witness. But the objection was in the most general form, and included certainly no more than the legal admissibility of the answer proposed to be obtained. It was not objected that the question was not a part of the cross-examination, or that the cross-examination of the witness had been completed, and therefore in no manner raised the point which has now been presented; but if it had, it is clear that it would be without foundation, for the reason that the district attorney is permitted by the law to ask questions of this description, as being within the proper range and limits of a cross-examination.

The affidavit on which the motion was made for a new trial did not prove the fact that the juror whose conduct was drawn in question had conversed with the other person who was also a juror but not drawn for the trial of this indictment, concerning the defendant or the charge upon which he was being tried. It was not made to appear that anything whatever had been said

to the juror relating to this case, and in the absence of evidence on that subject it cannot be presumed that the juror so far misconducted himself as to permit another person to speak to him concerning the case, or to attempt to prejudice him against the defendant himself.

There is no ground upon which a re-argument of the appeal could possibly be beneficial to the defendant, and the motion therefore should be denied.

BRADY, J., concurs.