## Court of Appeals.

*April,* 1884.

## PEOPLE *v.* IRVING.

(Affirming 2 *N. Y. Crim. Rep.* 47.)

Witness.—Defendant Sworn in his own behalf.—Disparaging Questions.—Assault.—Nature of Weapon.—Question for Jury.—Evidence.

When upon cross-examination, for the purpose of discrediting him, disparaging questions are put to a defendant who has been sworn on

his own behalf, the prosecution is bound by his denials, and said defendant cannot be held prejudiced by the allowance of questions so answered by him in the negative.

Where such a defendant is asked on cross-examination if he did not "gouge out" a certain person's eye, and he denies that he did so, voluntarily adding that he struck him, and explaining the circumstances of said act in such way as to show that he acted entirely on the defensive, he will not be deemed prejudiced by the allowance of the question.

Upon the trial of an indictment for assault with a dangerous weapon, where the defendant had been sworn on his own behalf, the court may, in its discretion, permit him to be asked on cross-examination for the purpose of discrediting him as a witness, whether or not he had committed a prior assault, e. g., upon a fellow-member of the legislature. Proof of such an act unjustified or unexplained, tends to impeach the moral character and affect the credit of the witness.

Such a line of questions must be confined to specific acts which tend to discredit the witness or impair his moral character, and not extended to mere accusations made against him, e. g., an indictment.

Upon the trial of such an indictment, whether the pistol with which the assault was committed by striking complainant therewith, was an instrument or thing likely to produce bodily harm, is a question for the jury, though the weapon was not produced or otherwise described than by its common name, the character of the wounds inflicted being severe and fully described.

APPEAL from the judgment of the General Term of the Supreme Court, First Department, sustaining a judgment of the General Sessions of New York, convicting defendant of assault in the second degree, committed by striking the complainant twice with the butt end of a pistol, thereby severely injuring him.*

*W. Bourke Cockran*, for the prisoner, appellant.

*Peter B. Olney*, district attorney, and *John Vincent* (assistant), for the people, respondents.

FINCH, J.—Upon the trial of an indictment for assault and battery the defendant testified in his own behalf as a witness.

---

* For the facts and points of counsel, see report of this case at General Term, *ante*, p. 47.

According to the evidence of a complainant and one witness who corroborated him, the assault was without provocation, and so brutal and causeless as to indicate in the perpetrator either temporary intoxication or unusual ugliness of temper. But according to the evidence of the accused and of three witnesses whom he called in his behalf, the complainant rushed at him with abusive language and a bottle in his hand, and the defendant merely laughed and walked out. And these witnesses further said that after this occurred the complainant and one McDermott had a fight, from which inferentially, the complainant's injuries might have arisen. A question of fact of a very serious character was thus presented to the jury. There was falsehood upon one side or the other, and to reach the truth much regard was to be had to the respective credibility of the witnesses and to their moral character. The cross-examination of the complainant recognized the situation, and a series of disparaging questions were put to him and answered, as to whether he had kept a gambling house, had been arrested for beating a woman, had bitten a man's thumb off, had shot a man named Miller; none of which were objected to. If the complainant had done these things, if he was the sort of man such a history described, it was due to the accused, whose liberty was imperiled by the testimony, that the jury should learn something of the character of the witness.

On the cross-examination of the accused similar disparaging questions were put, but to these, objections were interposed, which were overruled, and the exceptions taken are now before us.

All of the inquiries except two were answered in the negative. The prosecution was bound by these replies, and the series of questions thus answered cast no discredit upon the witness, and did him no possible harm. The jury were bound by his denials, and the inquiries drew out no facts from which discreditable inference could be drawn. The answers rendered the questions innocuous. But that cannot so easily be said of the remaining two inquiries. One of them, however, does not raise the question sought to be presented. The accused had just been asked if in 1870 he gouged both of the eyes out of a man named James and answered in the negative. He was then

asked, "Didn't you do the same thing with a man named Ferguson in 1881?" to which he answered, "I did not gouge his eye out." That answered the inquiry. Nothing further in respect to that occurrence was asked of the witness and no added statement was required. What followed was his own voluntary declaration, which he need not have made, and which was not drawn from him by any question of the prosecutor. The witness added, "I struck him," and then went on to explain the circumstances, showing plainly that Ferguson was the aggressor, and the accused acted only on the defensive.

But the inquiry whether the witness did not assault Smith Weed, a member of the legislature, and which was answered in the affirmative, although followed by an explanation, cannot be certainly deemed harmless, and is not, therefore, to be deemed within the doctrine of Nolan v. Brooklyn City and N. Y. R. R. Co. (87 N. Y. 68). There the witness was asked, not what he had done, but what the Fire Department had done; whether it had expelled him. We have held of late that mere charges or accusations, or even indictments may not so be inquired into, since they are consistent with innocence, and may exist without moral delinquency. People v. Crape, 76 N. Y. 288 ; People v. Brown, 72 N. Y. 571 ; Ryan v. People, 79 N. Y. 594. An expulsion from the Fire Department might be summary or arbitrary, and with little or no chance of a fair trial, or for causes involving no crime, and not affecting the moral character ; and so it turned out upon the answer given, which effectually barred any injurious inference. But this is not such a case. The witness was asked if he assaulted a fellow member of the legislature and was expelled from that body. He denied the expulsion, but admitted the assault. He confessed what unexplained, was the commission of a crime, and as was said in People v. Brown (supra), tended to impair the credit of the witness "by its tendency to establish a bad moral character." In a closely balanced case it could hardly fail to affect his credibility. We have read carefully the explanation which the accused gave. It does not mend the matter much. At all events we cannot say that, taking question and answer and explanation all together, the product was not an injury to the accused.

That brings us to the inquiry whether the question asked

was proper. We think it was so, within the discretion of the trial court, and its permission not an abuse of that discretion. The rule, as it stood before any restriction or limitation was put upon it, was stated in Real *v.* People (42 *N. Y.* 281), where the witness was such merely and not the party. It was then said that for the purpose of discrediting his testimony the witness may be asked upon cross-examination as to specific acts, and the propriety and need of such a rule was argued at length. In People *v.* Crapo (*supra*), the limitation was applied that facts must be inquired about and not mere accusations, whose truth was not presumed, and which, therefore, did not tend to impair the moral character. That decision was made in 1879, and just one year later than the case of People *v.* Casey, (76 *N. Y.* 288), which decides the precise question here involved, and in which the chief judge, who wrote the opinion in the Crapo case concurred. The prisoner stood indicted, for assault with a dangerous weapon, and testified on his own behalf. On cross-examination the prosecutor was permitted to question him as to other altercations in which he had been engaged, and other assaults which he had committed, and it was held no error. Facts were asked for there, and not accusations or irresponsible charges, and so occasion arose for the limitation which one year later was needed and applied. A little later, in Ryan *v.* People (*supra*), the rule was still conceded that questions as to specific facts which tend to discredit the witness or impair his moral character may be asked on cross-examination, but it was held that an indictment was a mere accusation and had no such legitimate tendency. In People *v.* Noelke (94 *N. Y.* 143, 144; 1 *N. Y. Crim. Rep.* 495), the cases were reviewed and we had on an indictment and trial for selling lottery tickets, that the defendant testifying in his own behalf might be asked on cross-examination, not only whether he has been convicted for sending lottery papers through the mail, but also whether for a period extending before the offense with which he was charged he had been engaged in the lottery business.

The General Term seems to have thought that an assault committed upon other persons "would not necessarily or properly tend to impeach the moral character or impair the

credit of the witness." We held the exact contrary in People *v.* Casey. The questions there sustained were admissible upon that ground alone, and the case is decisive of this. The assault upon Weed, unexplained and unjustified, was a crime punishable by fine or imprisonment. It indicated disregard of the law, contempt for personal rights, and an ungovernable temper prompting to a criminal act. If we are ever to roam through our Penal Code, in search of a crime capable of being committed, without indicating a defective moral character, we shall not select the one here in question.

Whether the pistol in the hands of the defendant was an instrument or thing likely to produce grievous bodily harm was a question of fact for the jury. Nelson *v.* People, 23 *N. Y.* 298; Abbott *v.* People, 86 *N. Y.* 471. Although the weapon was not produced or otherwise described than by its common name, yet it was capable of being used otherwise than by firing; and such description by its name, in connection with the character of the wound inflicted, was sufficient to carry to the jury the question of fact.

We discover no error in the record, and the judgment should be affirmed.

All concur except RUGER, Ch. J., and RAPALLO, J., not voting.