## REPUBLIC OF HAWAII *v.* HENRY LUNING.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED DECEMBER 24, 1897.　　　DECIDED APRIL 20, 1898.

JUDD, C.J., FREAR AND WHITING, JJ.

Subject to the constitutional privilege of a witness to refuse to answer questions the answer to which may tend to criminate him, he may be cross-examined with reference to his past life if such matters tend to weaken his credibility, though they might tend to criminate, disgrace or degrade the witness.

The extent to which disparaging questions, not relevant to the issue, may be put on cross-examination, is discretionary with the trial court, and its rulings are not subject to review unless it appears that the discretion was abused.

OPINION OF THE COURT BY WHITING, J.

The defendant was indicted and tried in the First Circuit Court, August Term, 1897, for the crime of sodomy, and the

jury found a verdict of guilty of an attempt to commit that crime. Numerous exceptions were taken during the trial and allowed, but from the nature of the case we do not deem it necessary to now give them in detail. The prosecuting witness was an accomplice in the crime and, on cross-examination, the defendant's counsel asked the witness disparaging questions to show collateral facts which tended to disgrace and degrade the witness and show that he led a vicious and immoral life and was totally depraved, but the court refused to allow the questions.

The prosecuting witness was asked on cross-examination, "Now while you were living in Honolulu, did you ever have any money since you have been living down there near Smith's Bridge? A. Yes sir. Q. Where did you get it, tell the truth? A. I stole it." The question was then asked, "How many times did you steal money?" The court refused to allow the question. The defendant then offered to show by cross-examination, from the witness' own mouth, that he was an habitual thief and was steeped in crime which also was not allowed by the court. After the prosecuting witness had stated that he had also committed the same crime with another boy, M. G., the defendant asked, "How did you come to do it with that boy?" The court refused to allow the question. The defendant claimed that it showed moral turpitude. Questions as to immorality with loose women were also disallowed by the court, and the defendant duly excepted. Such questions need not be set forth here in detail.

It does not appear on what ground the court refused to permit the witness to be cross-examined on collateral matters which tended to disgrace him. It is claimed on the part of the defendant, that the court made its ruling as a matter of law and not of discretion. In *People v. Webster*, 139 N. Y. 84, it is laid down that "it is now an elementary rule that a witness may be specially interrogated upon cross-examination in regard to any vicious or criminal act of his life, and may be compelled to answer unless he claims his privilege. The extent to which disparaging ques-

tions, not relevant to the issue, may be put on cross-examination, is discretionary with the trial court, and its rulings are not subject to review here unless it appears that the discretion was abused."

*Real v. People,* 42 N. Y. 281;

*Foster v. People,* 18 Mich. 273;

*Territory v. Hare,* 44 N. W. Rep. 1007 (N. D.)

*Thomas v. State* (Texas), 34 So. W. Rep. 631.

"A judge is bound to permit the inquiry when it seems to him in the exercise of sound discretion, that it would promote the ends of justice, and to exclude it when it seems unjust to the witness and uncalled for by the circumstances of the case."

*Gt. W. Turnpike Co. v. Loomis,* 32 N. Y. 132;

*Ryan v. People,* 79 N. Y. 602;

*State v. McCartey,* 17 Minn. 76.

"Subject to the constitutional privilege of a witness to refuse to answer questions the answers to which may tend to criminate him, it is proper to show collateral facts that might tend to criminate, disgrace, or degrade the witness if such other facts tend to weaken his credibility."

*State v. Pancoast* (N. D.), 67 N. W. Rep. 1058;

*The People v. Irving,* 95 N. Y. 541;

*Ryan v. People,* 79 N. Y. 594.

Within reasonable limits a witness may, on cross-examination, be thoroughly sifted upon his character and antecedents. The court has a discretion as to how far propriety will allow this to be done in a given case, and will, or should, prevent any heedless or wanton abuse of the power. *Wilbur v. Hood,* 16 Mich. 44.

. Other competent witnesses may be asked as to the reputation of a particular witness for truth and veracity in his neighborhood, (and, in some jurisdiction, as to his general moral character) but specific acts cannot be shown in this way. For, every witness is presumed to come prepared to defend his general reputation for truth and veracity, but not specific charges.

The rule is different as to cross-examination of the witness

himself.  He may be questioned as to specific acts and as to matters showing his general moral character in so far as this might affect his credibility.  The reason of the rule excluding questions to other witnesses as to specific acts of the witness whose character is in question does not apply here because the witness, being examined himself, is not called upon to defend anything which he is not prepared to defend and his answers are binding upon the cross-examiner and cannot be rebutted by other witnesses, and thus the danger of collateral issues is avoided.  Moreover, if this could not be done, a dishonest witness would have the same standing as an honest one and in most cases could not be impeached.  His moral character can be shown (as distinguished from his character directly for truth and veracity) because experience shows that a person of general degraded character is not as worthy of belief as one of general good character.  It is better that the witness be shown up for what he is, in the interests of truth and the rights of the parties, than that witnesses themselves be exempt from having their lives exposed to some extent, and this exposure will be limited by the discretion of the judge and the interests of the party and his counsel.  (See 14 Alb. L. J. 281.)  One of the best cases setting forth both the law on this subject and the reasons is *Carroll v. State*, 24 S. W. (Tex.) 100.  See also *Exon v. State*, 26 S. W. (Tex.) 1088, in which a new trial was granted for ruling out such questions.  Also *Zanone v. State*, 36 S. W. (Tenn.) 711.

*Johnston v. Farmers' Fire Ins. Co.*, 106 Mich. 96;
*State v. Pratt*, 121 Mo. 566;
*Territory v. De Gutman*, 42 Pac. (N. M.) 68;
*Stokes v. People*, 53 N. Y. 164;
*Newcomb v. Griswold*, 24 N. Y. 298;
*State v. Hack*, 118 Mo. 92;
*State v. Pancoast*, 67 N. W. (N. D.) 1052;
14 Alb. L. J. 281;
29 Enc. Law, 839;
8 Enc. Pl. & Pr. 117.

The questions however should in general refer to matters of recent date and should not be allowed to be asked in an insinuating way or simply for the purpose of disgracing the witnesses. The court has large discretion as to the way the questions should be put and the extent of the examination, but the discretion should be exercised liberally.

*Repub. v. Tokuji*, 9 Haw. 548, is cited contra. The court there said: "Evidence to be admissible for the purpose of affecting the credibility of a witness must be such as bears directly upon his character for truth and veracity. Otherwise it would be irrelevant. It is not competent if it merely tends to disgrace the witness. We do not see how the fact that a witness lived under a different name at another time and place could affect his credibility,—even if it would necessarily tend to disgrace him." In that case, as in this, the question was asked on cross-examination, but no emphasis was laid on that fact by counsel. The question was treated rather as a general one as to the class of questions that might be put to any witness as to the credibility or moral character of a particular witness. The court did not intend to decide upon what questions might be asked a witness himself on cross-examination as distinguished from questions that might be asked other witnesses in regard to him. Even if we regard merely the facts and the conclusion of the court in that case, as distinguished from the question of law in the mind of the court, still the decision is not necessarily in conflict with our decision in this, for the question there put to the witness was very different from the questions here sought to be put and the circumstances also were quite different, and the ruling of the trial court in that case might have been sustained as within his discretion. Probably whichever way the trial court might have ruled in that case, no new trial could have been granted on the ground of prejudicial error.

In the case at bar, the prosecuting witness was not only an accomplice, but the evidence given by him shows him to be a person, although young, of such a character morally that the

court ought to have allowed a searching inquiry as to his immorality and depravity, as affecting his credibility, even if it tended to disgrace him.

The exceptions are sustained and a new trial is ordered.

*E. P. Dole, Dep. Attorney-General,* for prosecution.

*J. A. Magoon, R. D. Silliman* and *W. S. Edings* for defendant.