(117 App. Div. 432)

## PEOPLE v. GLUCK.

(Supreme Court, Appellate Division, First Department. February 8, 1907.)

1. EMBEZZLEMENT—LARCENY BY BAILEE—APPROPRIATION—EVIDENCE.

Defendant, after negotiating with B. for purchase of a diamond ring, received one, and signed, after reading it, a memorandum, reciting that the diamond weighed three-fourths of a karat, less a certain amount, and was of the value of $175, and that it was consigned by B. to defendant, returnable on demand, and that it was not sold, and that title did not pass, and at the same time defendant signed another paper, stating that he was to deposit with B. $30 on execution of the agreement, and certain sums on subsequent dates, till the total deposits amounted to $175, when B. was to deliver to him a diamond, that all the deposits were to become the property of B., and that, if defendant defaulted in any payment, B. might deliver to defendant an article of the same nature reasonably worth the sum deposited. On a trial for larceny of the ring it appeared that, when it was delivered to defendant, he gave to B. $5 and a check of a third person for $25, indorsed by him; that the check was returned to B. marked "N. G."; that thereafter B. demanded return of the ring, and defendant said, "All right, I accept your demand," but did not return it. Defendant testified that, when he got the ring, B. weighed the diamond, and told him that it weighed 1¼ karats, that thereafter he found this was not its correct weight, and he thereupon stopped payment of the check and refused to make further payments. He also testified that he thereafter offered to return the ring if B. would return the $5 and the check. B. and another testified that such offer was not made. *Held* that, the jury being justified in finding that defendant did not stop payment of the check for the reason assigned, the correct weight of the diamond being given in the memorandum, and he not having made the agreed payment at the time of delivery of the ring, and not having returned it when demanded, he could be found guilty under Pen. Code, § 528, declaring that a person who, with intent to deprive the owner of his property or to appropriate it to his own use, having in his possession. as bailee, any property, appropriates it to his own use, is guilty of larceny.

2. WITNESS—CROSS-EXAMINATION OF DEFENDANT TO DISCREDIT HIM.

Defendant on a trial for larceny having offered himself as a witness, thereby giving the state the right to prove specific facts tending to discredit him or impeach his moral character, and he having on his direct examination testified that he had been arrested in connection with a ticket agency of a steamship line, but was discharged, the state may on cross-examination ask him if such steamship ticket business was not that of selling to poor Jewish immigrants worthless orders for steamship tickets. and if he did not receive, in one instance, $83 for selling worthless orders for such tickets; such acts tending to show disregard of law, and contempt for the right of others.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, §§ 1144–1148.]

Patterson, P. J., and Houghton, J., dissenting.

Appeal from Court of General Sessions, New York County.

Mannie Gluck was convicted of grand larceny in the second degree, and appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, IN-GRAHAM, HOUGHTON, and LAMBERT, JJ.

Isadore L. Pascal, for appellant.

E. Crosby Kindleberger, for respondent.

McLAUGHLIN, J.   The defendant appeals from a judgment convicting him of the crime of grand larceny in the second degree, upon which he was sentenced to a term of imprisonment in state's prison, of not less than one nor more than four years.

The validity of the judgment appealed from is attacked principally upon the ground that, taking all the evidence together, it is insufficient to sustain the finding of the jury that the defendant was guilty of the crime charged, and for which he was convicted.   The evidence, in sub-stance, tends to show that on the 4th of January, 1906, the defendant went to the place of business of the complaining witness (one Behrens) for the purpose of purchasing, as he said, a diamond ring, and, on being shown several loose stones, selected one to be set in a ring; that the stone thus selected was set in a ring, and on the following day Behrens delivered it to the defendant, who at that time signed a memorandum, stating that "1 14 Kt. Solid Gold Tooth Ring, Roman colored, set with solitaire diamond weighing $3/4$ less $1/16$ $1/64$, value $175," was consigned by John Behrens & Co. to defendant, returnable on demand; that the same was not sold, nor did title thereto pass; that the conditions on which the consignment was made were in writing, which the defendant read carefully before he signed the same and received the ring; that concurrently with the execution of this writing another one was signed by defendant, stating that he was to deposit with Behrens & Co. $30 on the execution of the agreement and certain sums on certain dates thereafter, until the total deposits amounted to $175, when Behrens & Co. were to deliver to him one diamond ring; that all the deposits then made were to become the property of Behrens & Co., who, in case defendant defaulted in any payment, were to deliver an article of the same nature, reasonably worth the sum deposited.

It was also made to appear that at the time the ring was delivered to the defendant he gave to Behrens & Co., or Behrens, the complaining witness, $5 in cash and a check of a third party, payable to his own order, and which was indorsed by him, for $25, which was not paid, the same being returned to Behrens marked "N. G."; that subsequently Behrens, in the presence of his son, demanded the return of the ring, and the demand was refused.   The material part of the evidence offered on the part of the people was not disputed, but the defendant testified that, when he purchased the ring, Behrens weighed the diamond selected and told him it weighed a karat and a quarter, and that after the ring had been delivered to him he ascertained, by having it weighed, that this was not its correct weight, and he thereupon stopped payment of the check referred to and refused to make further payments; and that subsequently he offered to return the ring if Behrens would give back the $5 he had paid and return the check.   This Behrens denied, and he was corroborated by his son as to the conversation which took place at the time the demand was made for the return of it, after the check had been dishonored.   That a demand was made for the return of the ring was not denied by the defendant.   This, in substance, is the testimony offered by the respective parties, from which it appears that the defendant signed a memorandum at the time he accepted

the ring, which showed the weight of the diamond to be a little less than three-fourths of a karat. It was therefore unnecessary for the defendant to apply to other jewelers to ascertain the weight of the stone, nor could he in any way have been deceived upon that subject. He knew from the statement signed that the stone was not represented to weigh 1¼ karats, and therefore the jury was justified in finding that his stopping payment of the check was not for the reason assigned by him, but in pursuance of a purpose to obtain possession and keep the ring without paying for it.

The charge of the learned trial court was as favorable to the defendant as could be reasonably asked. He charged the jury that it must acquit if it reached the conclusion that the defendant offered to return the ring, or if he did not receive it as bailee. The defendant obtained the ring from Behrens & Co. He did not pay for it, and it was specifically agreed that until the deposits amounted to the price asked, viz., $175, the title to the ring was to remain in Behrens & Co., to whom the same should be returned on demand. He did not make the payment agreed at the time the ring was delivered, nor did he return the ring when demanded. Having failed to return the ring when demanded, he was, under the provisions of section 528 of the Penal Code, guilty of larceny. The judgment of conviction, therefore, should be affirmed unless there is merit in defendant's contention that errors were committed in the admission of evidence. During the defendant's direct examination he testified that he had been arrested in connection with a ticket agency of a steamship line, but was discharged. On cross-examination he was asked, and permitted to answer against objection and exception, if the steamship ticket business that he was connected with was not that of selling to poor Jewish immigrants worthless orders for steamship tickets, and if he did not receive, in one instance, $83 for selling worthless orders for such tickets. To the first question he answered that he did not get money on false tickets from any one, and, to the second question, that he sold an order for tickets which would be honored. He contends that his exception in each instance was well taken. I am of the opinion that the ruling was proper and the evidence admissible. The defendant having offered himself as a witness, the people had a right to prove specific facts which tended to discredit him or to impeach his moral character. People v. Irving, 95 N. Y. 541; People v. Webster, 139 N. Y. 84, 34 N. E. 730.

In holding that the admission of this evidence was not error, the cases cited by the appellant have not been overlooked, but the distinction between evidence of previous arrest, indictments, or accusations of wrongful acts, and evidence of the commission of the wrongful acts themselves, is apparent. It is only the admission of evidence of the former character that the authorities condemn. On the other hand, the rule is well settled that acts showing disregard of law, and contempt for the rights of others, may be shown on cross-examination to affect the credibility of the witness and to impeach his moral character, and the questions here propounded tended to elicit evidence bear-

ing on such subjects. People v. Irving, supra; People v. McCormick, 135 N. Y. 663, 32 N. E. 26.

The judgment of conviction is right, and should be affirmed.

INGRAHAM and LAMBERT, JJ., concur.

PATTERSON, P. J. I dissent from the decision of the majority of the court affirming the judgment in this case. The defendant was convicted of the crime of grand larceny in the second degree. There were two counts in the indictment; the first charging the defendant with feloniously stealing, taking, and carrying away a finger ring of the value of $175, the property of one John Behrens. In the second count he was charged with having in his custody as bailee the same property referred to in the first count, and with feloniously appropriating the same to his own use, with the intent to deprive and defraud the said John Behrens of the same and of the use and benefit thereof. On the trial the case was submitted to the jury upon the second count.

I am of the opinion that the evidence is insufficient to sustain the conviction, in that it fails to show that the defendant retained the property with the intent to deprive and defraud the true owner of the same. The underlying facts of the case are plain. The defendant and John Behrens had negotiations respecting the sale by the latter to the former of a diamond ring. Those negotiations resulted in an arrangement by which the ring was to be delivered to the defendant. He paid $5 in money and indorsed and delivered to Behrens a check of a third party for the sum of $25. At the same time two papers were signed by the defendant, in one of which it is provided that:

"The under-mentioned goods are consigned to you to be returned within * * * or upon demand. None of them are sold nor does the title thereto pass. Conditions and agreements not expressly herein included shall not be considered as part hereof. All risks are assumed by the consignee. 1 14 Kt. Solid Gold Tooth Ring, Roman colored, set with solitaire diamond weighing ¾ less 1/16 1/64, value 175."

At the same time another paper was signed, termed a "deposit agreement," and under which the defendant agreed to pay Behrens $30 upon the execution of the paper, $8, on January 13th, and $3, each week, beginning on January 15, 1906, until the sum so deposited amounted to $175. The agreement then proceeded to state that:

"It is further expressly agreed that if the first party [the defendant] at any time defaults any of said deposits, the second party [Behrens] may deliver to the first party articles, as near as may be, of the same nature, manufacture and style as the chattels herein agreed to be delivered but reasonably worth the sums so deposited, and upon delivery thereof this agreement shall be deemed fulfilled and satisfied and it is further agreed that conditions and agreements not expressly included herein shall not be considered as a part hereof."

The transaction took place on the 5th of January, 1906. On January 16th Behrens, with his son, called on the defendant at his place of business, and then said to him: "The court requires me to make a personal demand upon you in the presence of a witness, and I now

demand the return of the diamond ring," holding the memorandum in his hand at the time, and the defendant said, "All right, I accept your demand." Behrens testified that that was all that was said. "He did not give me my ring." In the meantime, and after the $5 was paid and the $25 check given, the defendant claims that he discovered that the diamond in the ring was not of the quality represented by Behrens when he sold it, and that thereupon he (the defendant) stopped the payment of the check. When the return of the ring was demanded by Behrens the defendant said, "All right, I accept your demand." He did not refuse, therefore, to give up the ring. He swore that he stated that he would give it up upon the $5 and the $25 check being returned. That is denied, it is true, by Behrens and his son; but criminal intent cannot necessarily be inferred from his mere neglect to return the ring. It had come into his possession lawfully, and Behrens expressly agreed that, if the defendant made default in any of the deposits, he (Behrens) "may deliver to the first party articles, as near as may be, of the same nature, manufacture and style as the chattels herein agreed to be delivered but reasonably worth the sums so deposited." This stipulation cannot be regarded as leaving it altogether optional with Behrens whether he would deliver to the defendant merchandise of the value of $5 or of $25; but, at all events, the defendant might be justified in believing that before the ring was returned by him he was entitled to something as an equivalent for the money he had paid on account of the transaction. He might well have believed that before the return of the ring could be exacted or compelled Behrens ought to satisfy him in some way for the money paid on account. There is nothing in this evidence to indicate an original purpose on the part of the defendant to procure possession of the ring by fraud, artifice, or deception, and its conversion subsequently with a felonious intent is not satisfactorily established.

I think the judgment should be reversed and a new trial ordered.

HOUGHTON, J., concurs.