(162 App. Div. 811)

### PEOPLE v. STILWELL.　(No. 5910.)

(Supreme Court, Appellate Division, First Department.　June 12, 1914.)

1. CRIMINAL LAW (§§ 419, 420*)—EVIDENCE—HEARSAY EVIDENCE.

Where, on a trial for bribery, the testimony of accused and the bribe giver conflicted as to what was said at a conference between them, the testimony of a witness as to what accused stated to the witness, within an hour after the conference, the bribe giver had said, was inadmissible as hearsay.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 973–983; Dec. Dig. §§ 419, 420.*]

2. WITNESSES (§ 352*)—IMPEACHMENT—EVIDENCE—ADMISSIBILITY.

Where, on a trial of a state senator for bribery for reporting favorably a bill desired by prosecutor to prevent a stock exchange from discriminating against his company by refusing to list securities engraved by it, there was no evidence of any disagreement between accused and prosecutor prior to the commission of the crime, and that the bill was reported to the Senate in the form desired by prosecutor, and there was nothing to show that he laid to accused the failure of the committee in the Assembly to favorably report the bill, evidence that prosecutor by signs characterized the members of the stock exchange as robbers and thieves was inadmissible to affect the credibility of prosecutor.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1152; Dec. Dig. § 352.*]

3. BRIBERY (§ 10*)—EVIDENCE—ADMISSIBILITY.

On a trial of a state senator for bribery for reporting favorably a bill desired by prosecutor to protect his company against discrimination by a stock exchange refusing to list securities engraved by the company, photographs of signs put up by prosecutor on the building of his company, characterizing the members of the stock exchange as robbers and thieves, were properly excluded, for the falsity of the charges against the members of the exchange was a collateral issue.

[Ed. Note.—For other cases, see Bribery, Cent. Dig. § 9; Dec. Dig. § 10.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. CRIMINAL LAW (§ 388*)—EVIDENCE—ADMISSIBILITY.

Where the court admitted in evidence sheets of paper on which a witness had written in longhand what purported to be a verbatim report of a telephone conversation overheard by him, which report contained 685 words and was said to have been written in the 13 minutes during which the conversation lasted, the refusal of the court to grant the request of a juror to permit the witness to write the conversation at dictation in the presence of the jury, to determine how long it would take him to write it down, was within the court's discretion.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 854; Dec. Dig. § 388.*]

5. CRIMINAL LAW (§ 1171*)—TRIAL—CONDUCT OF PROSECUTING ATTORNEY.

The action of the court in permitting the district attorney to ask questions which he knew were incompetent and for the purpose of getting before the jury indirectly what he could not do directly was not ground for reversal, where objections to most of the questions were sustained, and, as to the others, the answers were favorable to accused.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3126, 3127; Dec. Dig. § 1171.*]

Appeal from Trial Term, New York County.

Stephen J. Stilwell was convicted of bribery, and from a judgment of conviction, and from an order denying a new trial, he appeals. Affirmed.

See, also, 81 Misc. Rep. 456, 142 N. Y. Supp. 628.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Robert M. Moore, of New York City, for appellant.
Robert C. Taylor, of New York City, for the People.

McLAUGHLIN, J. The defendant was convicted of the crime of bribery, for which he was sentenced to imprisonment in state's prison for a term of not less than four, nor more than eight, years. He appeals from the judgment, and also from an order denying a motion to set aside the verdict and for a new trial.

At the time the crime is alleged to have been committed, the appellant was a member of the Senate of the state of New York and chairman of its Codes Committee. One Kendall, president of the New York Bank Note Company, was then endeavoring to secure the enactment of legislation designed to prevent the New York Stock Exchange from discriminating against his company by refusing to list securities engraved by it. In furtherance of the object sought, Kendall called upon the Governor of the state and was, by him, referred to the defendant as the proper person to whom to apply for the relief desired. Kendall thereupon had an interview with the appellant, with the result that on the 27th of February, 1913, he introduced in the Senate a bill, drafted at Kendall's request, either by himself or the witness Lewis. The bill was read twice by unanimous consent, and then referred to the Committee on Codes, from which it was reported favorably on March 27th. On March 3d a bill identical in form and substance was introduced in the Assembly, read once, and referred to its Codes Committee, of which one McGrath was chairman. The

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

charge made in the indictment was that the defendant demanded a bribe of $3,500 as a condition of having the bills favorably reported.

It is not claimed by the appellant, and could not well be in view of the evidence offered at the trial, that the jury was not justified in finding him guilty. It is claimed, however, that the judgment should be reversed for errors committed by the trial court in its rulings upon the admission and exclusion of evidence, and also because of alleged improper and prejudicial remarks of the district attorney in opening and closing the case.

[1] What is claimed in this respect is:

First. That the court erred in excluding certain testimony of Assemblyman McGrath. Kendall testified that, at a conference between him and the defendant on the 24th of March, the latter demanded $500 for each of four members of the Senate Codes Committee as a condition of having the bill reported favorably by it, and he promised to canvass the Assembly Codes Committee and telegraph Kendall the amount necessary to secure its favorable action. Defendant denied there was any talk to this effect. His version of the conversation was that Kendall told him some one in New York, acting for or on behalf of the Assembly Codes Committee, had demanded a certain sum of money as a condition of having the bill reported; that he had told Kendall he did not know any member of the Assembly Codes Committee except its chairman, McGrath, and, if any one were seeking to get money out of Kendall as a consideration of having the bill reported, such person was acting on his own responsibility and did not represent the committee in any way. Kendall having denied that he made this statement, the defendant attempted to prove, by McGrath, that on March 24th, within an hour of their conversation, he had told McGrath what Kendall had said to him. This evidence was excluded on the ground that it was a self-serving declaration. Appellant claims this was error, for the reason that, at the time the declaration was made, it was not self-serving, and the defendant could then have had no apparent reason for or benefit from making it. It is urged that an exception to the rule excluding self-serving declarations arises from this circumstance. The evidence was not admissible. It was at most hearsay and incompetent. People v. Dolan, 186 N. Y. 4, 78 N. E. 569. Declarations of such a character are excluded because they are hearsay, not because they are self-serving (Wigmore on Evidence, § 1765), and no exception to the hearsay rule can be predicated on the fact that such a declaration is not self-serving when made.

[2, 3] Second. It is claimed that the court erred in excluding the admission in evidence of five photographs of signs put up by Kendall on the building of his corporation. In these signs Kendall characterized in strong terms the action of the New York Stock Exchange in listing only those securities engraved by a rival concern, using such terms as "robbers" and "thieves of the New York Stock Exchange." Appellant claims this evidence should have been admitted as affecting the credibility of Kendall, because it had a tendency to show that he was inclined to charge any one who did not agree with him with being a "thief" and "crook." But there is nothing to indicate any disagree-

ment between Kendall and the defendant prior to the commission of the crime alleged; on the contrary, they were on friendly terms. Kendall's bill was reported by the Senate Committee in the form desired by him, and there is nothing to indicate that he laid to the defendant the failure of the committee in the Assembly to favorably report it. It is further urged that the evidence was competent to show that the same motive, which actuated Kendall in charging members of the New York Stock Exchange unjustly, actuated him in charging the defendant unjustly. The ruling excluding the photographs was correct. The falsity of the charges against the members of the Stock Exchange was a collateral issue, and the refusal to allow the defendant's attorney to go into it on cross-examination was clearly within the discretion of the trial court. People v. Braun, 158 N. Y. 558, 53 N. E. 529; Langley v. Wadsworth, 99 N. Y. 61, 1 N. E. 106; People v. Casey, 72 N. Y. 393.

[4] Third. It is claimed there was error in the refusal of the court to permit the witness Field to write at dictation, in the presence of the jury, a conversation which he claimed to have heard over the telephone and taken down. There had been admitted in evidence four sheets of paper, on which Field had written in longhand what purported to be a verbatim report of the conversation had on March 24th between defendant and Kendall. This report contained 685 words, and was said to have been written in the 13 minutes during which the conversation lasted. One of the jurors asked the court whether the conversation could be dictated to Field in court to find out how long it would take him to write it.. There was no request by the defendant to have the experiment made. No objection or exception was taken to the ruling of the court refusing the request of the juror. It was certainly within the court's discretion to refuse the request.

[5] Fourth. It is urged that the court erred in permitting the district attorney to ask certain questions relative to alleged transactions in the life of the defendant and his witness Lewis. The appellant's contention is that the district attorney, when he asked the questions, knew they were incompetent, and their sole purpose was to get before the jury indirectly what he could not do directly. However this may be, the objections to most of the questions were sustained, and, as to the others, the answers were favorable to the defendant.

"The prosecution was bound by these replies, and the series of questions thus answered cast no discredit upon the witness and did him no possible harm. The jury were bound by his denials, and the inquiries drew out no facts from which discreditable inferences could be drawn. The answers rendered the questions innocuous." People v. Irving, 95 N. Y. 541; People v. Mullen, 163 N. Y. 312, 57 N. E. 473.

Finally it is claimed the district attorney, in his opening and closing addresses, made improper and prejudicial remarks against the defendant which were intended to excite the passion and prejudice of the jury. The portions of the addresses to which objections are made are too numerous to be considered at length in an opinion; it is sufficient to say that after a careful examination of them they did not, in my judgment, injure the defendant. People v. Gillette, 191 N. Y. 107, 83

N. E. 680; People v. Conklin, 175 N. Y. 333, 67 N. E. 624; People v. Doody, 172 N. Y. 165, 64 N. E. 807.

The defendant had a fair trial, was justly convicted, and the judgment and orders appealed from should be affirmed. All concur.