TERRITORY *v.* R. T. BANSUELO.

No. 1836.

ARGUED FEBRUARY 11, 1929.  DECIDED FEBRUARY 19, 1929.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

The defendant was indicted for the carnal abuse of a female child under the age of twelve years. He was found guilty of indecent assault and duly sentenced by the court. The defendant filed a motion in arrest of judgment, which motion was overruled. An exception was taken and the action of the court is assigned as error. The ground of the motion was that an indictment charging carnal abuse does not include the charge of

indecent assault and therefore the verdict was not responsive to the indictment. This question seems to be definitely settled by section 4151, R. L. 1925, which provides that "under an indictment charging a defendant with rape or with carnal abuse of a female child under the age of twelve years or with assault with intent to commit either of said offenses, the jury may find the defendant guilty of an indecent assault if the facts so warrant."

The facts justifying the kind of verdict that was returned would be that the defendant had taken indecent liberties with the person of a female child under the age of twelve years without committing the graver charge of carnal abuse. *In re Gamaya*, 25 Haw. 414, 416. The jury by its verdict necessarily found that the defendant had not committed the crime of carnal abuse but had committed the crime of indecent assault. Without reciting the evidence we think it was sufficient to justify the conclusion of the jury that the defendant had taken indecent or improper liberties with the person of the female child mentioned in the indictment and that she was under the age of twelve years.

The defendant also excepted to the giving of the Territory's instruction number 9, which is as follows: "Whoever takes indecent and improper liberties with the person of a female child under the age of twelve years without committing or intending to commit the crime of rape shall be deemed guilty of indecent assault. Under an indictment charging a defendant with carnal abuse of a female child under the age of twelve years the jury may find the defendant guilty of an indecent assault if the facts so warrant." It is contended by the defendant that the giving of this instruction was erroneous for the same reason that he contends the denial of his motion in arrest of judgment was erroneous and for the addi-

tional reason that the instruction does not define "indecent and improper liberties with the person of a female child under the age of twelve years." Section 4150, R. L. 1925, which relates to indecent assault, and which is set out in the first clause of the instruction, does not specify the conduct necessary to constitute the offense. There is no reason therefore why the instruction should have gone beyond the language of the statute. The terms used in the statute are not technical terms requiring judicial definition but ordinary everyday terms, the meaning of which is commonly understood. Whether an assault upon a female child under the age of twelve years is indecent or improper is to be determined by the commonly accepted standards of decency and propriety, and the instruction properly submitted the question to the judgment of the jury.

The only other exceptions which we deem it necessary to specifically review relate to the exclusion of certain evidence sought to be adduced by the defendant on cross-examination. The first witness introduced by the Territory was the girl who was alleged in the indictment to have been carnally abused by the defendant. Her testimony tended to show that on July 17, 1927, at the defendant's house at Kapaa, Kauai, defendant had sexual intercourse with her and that at that time she was a few months under twelve years of age. She also testified that her home was at Camp 35 where she lived with her father and sister and one Gabriel and that in 1927 one Caetano also lived in the house. She also testified that at the time of the trial, which began on March 22, 1928, Caetano was not living at her father's house but she did not remember when he ceased to do so. On cross-examination the defendant propounded the following questions to this witness and she made the following answers: "Q. When Caetano was there you used to

sleep on this bunk built alongside the wall on the side towards the kitchen didn't you? A. Yes. Q. And Caetano slept in that same part of the house didn't he? A. Yes. Q. And your father slept in the other side of the house? Away from the wall towards the front of the house didn't he? A. Yes. Q. Did Caetano ever get into bed with you and your sister?" To this question the Territory made the following objection: "Object as incompetent, irrelevant and immaterial and as having no bearing whatsoever, nothing whatsoever to do with this case if the court please," which objection the court sustained. The defendant then, in the presence of the jury, made the following offer of proof: "We will have to then state to your honor our exception and offer at this time if the court please. We offer to show if the court please, that the testimony of this witness in reply to that question would be 'Yes,' and followed up we would then state 'how many times;' the witness would then say 'three times;' then we would ask her 'Did he do bad things to you in the same way as you said Mr. Bansuelo did?' and the answer would be 'Yes;' and 'Did you complain to your father who was in the next room or did you cry out at all?' and the answer would be 'No;' and that when questioned we would then further question the witness as to what date these acts occurred these acts by Caetano on her and her answer would be that she did not know and cannot fix the date as to them in spite of her fixing other dates. We would further follow up that line of examination by asking the witness 'How is it that you remember the date of these alleged attacks on you by Mr. Bansuelo and you do not remember the date of the attacks on you by Caetano?" To which offer the Territory made the following objection: "My objection to the offer is that it is incompetent, irrelevant and immaterial; that it tends if the court please to show other

certain specific acts committed by this witness with other men in a case which is practically that of rape and which is not, we submit under the law and conceded by counsel, admissible; that it will tend if admitted to prejudice the minds of the jurors, and on the further ground that it is not error for the court to disallow on cross-examination any matters that are not material; it is not error to disallow on cross-examination a question asked for laying a basis for impeaching a witness on immaterial matters which we contend is incompetent, irrelevant and immaterial in that it does not show, if anything, to be true that this defendant is innocent of the charge made against him. We object to the offer as made by counsel for the defense," which objection was sustained by the court and the defendant reserved an exception.

One of the grounds upon which the defendant claims that this proposed evidence should have been received is that it tended to disclose the immoral character of the witness and therefore to discredit her as a witness against him. Speaking generally on the subject of cross-examining witnesses as to specific acts of immorality for the purpose of discrediting them, this court said in *Territory* v. *Buick,* 27 Haw. 28, 46, 47: "A witness on cross-examination 'may be questioned as to specific acts and as to matters showing his general moral character in so far as this might affect his credibility. The reason of the rule excluding questions to other witnesses as to specific acts of the witness whose character is in question does not apply here because the witness, being examined himself, is not called upon to defend anything which he is not prepared to defend and his answers are binding upon the cross-examiner and cannot be rebutted by other witnesses 'and thus the danger of collateral issues is avoided. Moreover, if this could not be done a dishonest witness would have the same standing as an honest one

and in most cases could not be impeached. His moral character can be shown (as distinguished from his character directly for truth and veracity) because experience shows that a person of general degraded character is not as worthy of belief as one of general good character. It is better that the witness be shown up for what he is, in the interests of truth and the rights of the parties, than that witnesses themselves be exempt from having their lives exposed to some extent and this exposure will be limited by the discretion of the judge and the interests of the party and his counsel. * * * Within reasonable limits a witness may, on cross-examination, be thoroughly sifted upon his character and antecedents. * * * Subject to the constitutional privilege of a witness to refuse to answer questions the answers to which may tend to criminate him, it is proper to show collateral facts that might tend to criminate, disgrace or degrade the witness if such other facts tend to weaken his credibility * * *. It is now an elementary rule that a witness may be specially interrogated upon cross-examination in regard to any vicious or criminal act of his life and may be compelled to answer unless he claims his privilege. The extent to which disparaging questions not relevant to the issue, may be put on cross-examination, is discretionary with the trial court, and its rulings are not subject to review here unless it appears that the discretion was abused.' *Republic* v. *Luning,* 11 Haw. 390-393. To the same effect is *Territory* v. *Goo Wan Hoy,* 24 Haw. 720, 726, 727.''

The rule thus laid down is not questioned but it is contended by the Territory that it has no application when, as in this case, the prosecuting witness, whose sexual acts with some one other than the defendant are sought to be exposed by cross-examination, was at the time such acts were supposed to have been committed under twelve years of age and therefore incapable of

giving her consent. Upon this question there is conflict of judicial opinion. In *People* v. *Abbott,* 97 Mich. 484, 486, the court in discussing this question said: "But here the law conclusively presumes that the girl could not give her consent, and every act of intercourse with her would be a crime committed against her, and such acts could not therefore affect her credibility. Her reputation for truth and veracity could be inquired into, the same as of an adult, but she could not be impeached by her acts of intercourse." To the same effect is *People* v. *Johnson,* 106 Cal. 289, where the court said: "While, as a general rule, both the general reputation of a prosecutrix for unchastity and particular acts of unchastity may be proven in a criminal action, involving an intent to commit rape, yet, where the prosecuting witness is under the age of consent, no evidence either of general reputation or specific acts of unchastity is admissible, either as going to the question of consent, or as going to the credibility of her testimony in its entirety." In *State* v. *Smith,* 18 S. D. 341, 343, the court said: "Under our statute it is rape to carnally know a female child under the age of 16 years, either with or without her consent, and no evidence of specific acts of similar unchaste conduct with men other than the accused is admissible to show consent, or for the purpose of further disgracing the child, or as bearing upon the credibility of her testimony. In *State* v. *McKiel,* 259 Pac. (Ore.) 917, 918, the court said: "Counsel for appellant, for the purpose of attacking the credibility of the prosecutrix, propounded many questions concerning other acts of alleged unchastity by her. Since the girl was under the age of consent and force is not an essential element of the crime, it is clear that this line of inquiry was not proper and had no relevancy to the issue." In this jurisdiction a female child under twelve is conclusively presumed by law to be incapable of giving

her consent to sexual intercourse. This presumption is based on her mental and physical immaturity and her incapacity to realize the moral turpitude of such conduct. It would be a contradiction, therefore, to say that notwithstanding her innocence in the eyes of the law her credibility may nevertheless be attacked by eliciting from her, on cross-examination, confessions of conduct, the moral quality of which she was incapable of comprehending. It is an appreciation by the witness, when the act was committed, of its evil nature that renders proof of the act admissible for the purpose of discrediting her. If through lack of sufficient age the witness is conclusively presumed not to have had this appreciation the act, so far as she was concerned, was entirely innocent and cannot be considered as a reflection on her moral character and therefore on her veracity. It is our conclusion that the evidence offered by the defendant was inadmissible for the purpose of discrediting the prosecuting witness.

The defendant also contends that the fact which he offered to prove by the prosecuting witness was made relevant by the deposition of Dr. Boyden, a physician, which was offered and read to the jury by the Territory. Dr. Boyden testified that in November, 1927 (some four months after the occurrence alleged in the indictment), he examined the prosecuting witness and found a vaginal condition which in his opinion was caused either by sexual intercourse or masturbation, he could not say which. The defendant claims that in view of this medical opinion he should have been allowed to prove by the prosecuting witness that she had had intercourse with Caetano in order that the jury might determine whether Caetano or the defendant was responsible for the condition in which Dr. Boyden found her. One answer to this contention is that the jury acquitted the defendant of sexual intercourse with the prosecuting witness so the

testimony of Dr. Boyden, tending to show sexual intercourse, was either not accepted by the jury or the jury concluded that if there had been such intercourse it was not committed by the defendant. If, on the other hand, the jury believed that the vaginal disturbance from which the doctor found the prosecuting witness suffering was caused by *masturbation* there was no evidence tending to lay the responsibility upon the defendant. The only witnesses who testified to what the defendant did to the prosecuting witness were the prosecuting witness herself and her ten-year-old sister. The former testified to a consummated act of sexual intercourse. The latter testified that she saw the defendant hemo (take off) her sister's pants and go on top of her. There is nothing in this testimony tending to show that the defendant committed the masturbation which Dr. Boyden testified might have caused the prosecuting witness's vaginal disorder. It did tend to show either a completed sexual act or an indecent assault. The jury found that the sexual act was not committed but that an indecent assault was committed. Under these circumstances it was immaterial whether Caetano had sexual intercourse with the prosecuting witness or not.

Another reason why this contention cannot be sustained is that at the time the offer of proof was made Dr. Boyden's deposition had not been offered or read to the jury nor was the trial court informed that it would be offered. If the defendant desired to predicate the relevancy of the proof which he offered to make upon the deposition of Dr. Boyden he should at least have called the attention of the court to the deposition and the testimony which it contained.

We have also given careful consideration to the other exceptions and find them without merit.

The exceptions are overruled.

*A. G. Kaulukou,* County Attorney of Kauai (also on the brief), for the Territory.

*P. L. Rice* (*Rice & Clibborn* on the opening brief) for defendant.